TYREAN OWENS, Plaintiff-Appellant, v. DONALD SNYDER *et al.*, Defendants-Appellees.

First District (2nd Division)   No. 1—02—3765

Opinion filed June 1, 2004.

36

James Geis, of James Geis Law Office, of Chicago, for appellant.

Lisa Madigan, Attorney General, of Chicago (Gary Feinerman, Solicitor General, and Patricia Rosen, Assistant Attorney General, of counsel), for appellees.

PRESIDING JUSTICE WOLFSON delivered the opinion of the court:

Does a circuit court judge have the authority to *sua sponte* dismiss a complaint for *mandamus* before summons is issued to the defendant?

This question has been answered differently by two districts of this court, but is a matter of first impression in the First District. The Fourth District answered affirmatively, finding trial courts have the "inherent authority" to protect their dockets from the numerous, frivolous *mandamus* requests filed by inmates. *Mason v. Snyder*, 332 Ill. App. 3d 834, 840, 774 N.E.2d 457 (2002). The Second District disagreed, holding trial courts must follow the *mandamus* procedure, including service on the defendant, outlined by the Illinois Code of Civil Procedure. *People v. Shellstrom*, 345 Ill. App. 3d 175, 802 N.E.2d 381 (2003), *appeal allowed*, 208 Ill. 2d 538 (2004). We agree with the Fourth District's conclusion, but for different reasons.

FACTS

Plaintiff Tyrean Owens pleaded guilty to charges of delivery of a controlled substance, possession of a controlled substance, and criminal damage to property on August 9, 2000. The circuit court sentenced him to three consecutive prison terms: five years for delivery of a controlled substance, two years for possession of a controlled substance, and three years for criminal damage to property. The circuit court also admonished plaintiff that he would be placed on mandatory supervised release for three years. Plaintiff never filed a motion to withdraw his plea and did not pursue a direct appeal.

Plaintiff did file a postconviction petition contending that his sentence violated the holding of *Apprendi v. New Jersey*, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000). The trial court summarily

dismissed his petition and this court affirmed on appeal. *People v. Owens*, No. 1—01—0772 (2002) (unpublished order under Supreme Court Rule 23).

On October 9, 2002, plaintiff filed his *pro se* complaint for *mandamus* against defendant Donald Snyder, the Director of the Illinois Department of Corrections (IDOC). In his complaint, plaintiff alleged IDOC would improperly begin his mandatory supervised release after his discharge from prison. He contended his term of mandatory supervised release should run concurrently with his prison terms; otherwise, he could possibly serve more time than he agreed to in the plea agreement, because an inmate may be reincarcerated if he violates the terms of the supervised release (see 730 ILCS 5/3—3—9 (West 2002)).

On October 18, 2002, the circuit court "summarily" denied plaintiff's complaint, a *sua sponte* dismissal, without prior notice to him. No reason for the dismissal appears in the record.

On October 30, 2002, the circuit court clerk of Cook County sent plaintiff a letter advising him that "the Honorable Judge Stuart E. Palmer denied [his] motion for petition for *Mandamus*, off call." The record does not show summons to Director Snyder was issued or that he was served a summons or the complaint. Snyder never responded to the complaint. We assume there was no summons or service.

Plaintiff now appeals, contending the circuit court lacked the authority to summarily dismiss his complaint for *mandamus* under the relevant provisions of the Illinois Code of Civil Procedure (Code) (735 ILCS 5/14—101 *et seq.* (West 2002)).

DECISION

■ By challenging the circuit court's power to *sua sponte* dismiss his complaint for *mandamus* under the Code, plaintiff presents an issue of statutory construction. Questions of statutory construction are questions of law, reviewed *de novo. Illinois Tool Works, Inc. v. Independent Machine Corp.*, 345 Ill. App. 3d 645, 648, 302 N.E.2d 1228 (2003).

■ *Mandamus* is an extreme remedy used to compel a public official to perform a nondiscretionary, ministerial duty. *People ex rel. Madigan v. Snyder*, 208 Ill. 2d 457, 464, 804 N.E.2d 546 (2004). To prove a legal right to relief by *mandamus*, the complainant must demonstrate a clear right to the requested relief, the respondent's clear duty to act, and the respondent's clear authority to comply with the terms of the order. *People ex rel. Madigan*, 208 Ill. 2d at 465.

■ Article XIV (the *mandamus* statute) of the Code provides the procedural framework for *mandamus* actions. 735 ILCS 5/14—101 *et seq.* (West 2002). In section 14—102, the Code provides:

"Upon the filing of a complaint for mandamus the clerk of the court shall issue a summons, in like form, as near as may be as summons in other civil cases. The summons shall be made returnable within a time designated by the plaintiff not less than 5 nor more than 30 days after the service of the summons." 735 ILCS 5/14—102 (West 2002).

Section 14—103 requires served defendants to answer or otherwise plead in response to the complaint within a set period of time. 735 ILCS 5/14—103 (West 2002). Other sections under the *mandamus* statute provide for the plaintiff's reply and amendments to an inadequate complaint. See 735 ILCS 5/14—104, 14—108, 14—109 (West 2002).

Plaintiff contends the summary dismissal is a void order because the trial court did not follow the proper procedure set forth in the Code. Plaintiff contends the Code requires the court to follow specific procedures, such as issuing defendant a summons (735 ILCS 5/14—102 (West 2002)), prior to dismissing a complaint seeking *mandamus*.

When interpreting the statute, this court must ascertain and give effect to the intent of the legislature, which usually is determined by applying the plain meaning of the statute's language. *Emerald Casino, Inc. v. Illinois Gaming Board*, 346 Ill. App. 3d 18, 27, 803 N.E.2d 914 (2003), citing *Midstate Siding & Window Co. v. Rogers*, 204 Ill. 2d 314, 320, 789 N.E.2d 1248 (2003). We also adhere to the "deeply rooted" principle that statutes should not be construed in a way that produces absurd results. *Emerald Casino, Inc.*, 346 Ill. App. 3d at 34, citing *People v. Hanna*, 207 Ill. 2d 486, 800 N.E.2d 1201 (2003).

■ A statutory notice provision, like the summons requirement in section 14—102 (735 ILCS 5/14—102 (West 2002)), serves three purposes: (1) the defendant is notified of pending litigation; (2) it enables the defendant to appear and defend; and (3) it vests jurisdiction in the trial court over the defendant. *Nelson v. Keene Corp.*, 283 Ill. App. 3d 7, 10-11, 669 N.E.2d 665 (1996) (interpreting section 2—201(a) of the Civil Practice Law (735 ILCS 5/2—201(a) (West 1994)), which says, "Every action, unless otherwise expressly provided by statute, shall be commenced by the filing of a complaint. The clerk shall issue summons upon request of the plaintiff"). A judgment rendered *against a defendant* without proper service of a summons is void *ab initio* for lack of jurisdiction over the defendant. *Nelson*, 283 Ill. App. 3d at 11.

■ Although plaintiff contends the trial court's dismissal is void, he does not claim the trial court lacked jurisdiction. When issues implicating the circuit court's jurisdiction arise, a reviewing court has a duty to consider them. *Belleville Toyota, Inc. v. Toyota Motor Sales,*

*U.S.A., Inc.*, 199 Ill. 2d 325, 334, 770 N.E.2d 177 (2002). We consider the jurisdictional issue before addressing plaintiff's contention that the dismissal is void because the court lacked statutory authority to *sua sponte* dismiss the complaint.

If a court lacks subject matter or personal jurisdiction, any subsequent order is void *ab initio* and can be attacked at any time. *Schak v. Blom*, 334 Ill. App. 3d 129, 134, 777 N.E.2d 635 (2002). Subject matter jurisdiction is derived entirely from the Illinois Constitution (Ill. Const. 1970, art. VI, § 9), except in cases involving administrative review. *Belleville Toyota, Inc.*, 199 Ill. 2d at 334. The state constitution grants jurisdiction over all "justiciable matters." Ill. Const. 1970, art. VI, § 9. "[A] 'justiciable matter' is a controversy appropriate for review by the court, in that it is definite and concrete, as opposed to hypothetical or moot, touching upon the legal relations of parties having adverse legal interests." *Belleville Toyota, Inc.*, 199 Ill. 2d at 335.

■ In *Belleville Toyota, Inc.*, the Illinois Supreme Court held that statutory provisions are *not* "conditions precedent" to subject matter jurisdiction, except in the area of administrative review. In other words, in cases that do not rely on special statutory jurisdiction, the failure to follow statutory requirements did not preclude the court's exercise of jurisdiction. *Belleville Toyota, Inc.*, 199 Ill. 2d at 336. *Mandamus* actions, such as this one, do not rely on special statutory jurisdiction; therefore, the failure to follow the summons and response requirements in the *mandamus* statute did not deprive the circuit court of subject matter jurisdiction. *Cf. Forest Preserve District v. Industrial Comm'n*, 305 Ill. App. 3d 657, 664, 712 N.E.2d 856 (1999).

■ "Personal jurisdiction is conferred by service of summons or by a general appearance and is derived from the actions of the person sought to be bound." *Meldoc Properties v. Prezell*, 158 Ill. App. 3d 212, 216, 511 N.E.2d 861 (1987). Once the circuit court has personal jurisdiction over a defendant, it has the power to impose a personal obligation on that defendant. *Meldoc Properties*, 158 Ill. App. 3d at 216. Although subject matter jurisdiction cannot be conferred by waiver, estoppel, or consent of the parties (*Klopfer v. Court of Claims*, 286 Ill. App. 3d 499, 505, 676 N.E.2d 679 (1997)), personal jurisdiction can vest in the trial court if a party, by his actions, consents to or waives personal jurisdiction. See *Meldoc*, 158 Ill. App. 3d at 216. A plaintiff invokes personal jurisdiction by filing a complaint, thereby seeking to be bound to the court's resolution of the complaint.

■ In this case, plaintiff filed a complaint seeking *mandamus*. By submitting his request to the court, plaintiff was consenting to the trial court's exercise of personal jurisdiction over the *mandamus* ac-

tion. We find no legal authority that would allow a plaintiff to avoid a court's dismissal because of a lack of personal jurisdiction over his opposition. See *Christensen v. Saylor*, 297 Ill. App. 3d 719, 723, 697 N.E.2d 1188 (1998) (a party *over whom a court fails to acquire jurisdiction* may, at any time, directly or collaterally attack a judgment that the court enters against that party); see also *Fanslow v. Northern Trust Co.*, 299 Ill. App. 3d 21, 29, 700 N.E.2d 692 (1998) (applying Pennsylvania law, the court said, "[a] party may object to personal jurisdiction or improper service of process only on behalf of himself or herself, since the objection may be waived"). The Second District cases relied on by plaintiff do not turn on a lack of jurisdiction.

For these reasons, we believe the court had both subject matter jurisdiction and personal jurisdiction over the plaintiff, enabling it to dismiss his complaint. See also *In re Detention of Hayes*, 321 Ill. App. 3d 178, 189-90, 747 N.E.2d 444 (2001) (failure to serve process did not deprive the trial court of personal jurisdiction over the Department of Human Services because, although the Department had a statutory duty to arrange for the care, control and treatment of sexually violent persons, the civil commitment order directly affected only the rights of the respondent).

The *mandamus* statute states the clerk of court "shall" issue summons to the defendant, and the defendant "shall" respond within a specified time frame. See 735 ILCS 5/14—102, 14—103 (West 2002). "Shall" usually indicates a mandatory intent; however, the courts have interpreted it as directory at times. *Emerald Casino*, 346 Ill. App. 3d at 27. "[W]hen a statute prescribes the performance of an act by a public official or a public body, 'the question of whether it is mandatory or directory depends on its purpose.'" *Emerald Casino*, 346 Ill. App. 3d at 27, quoting *Andrews v. Foxworthy*, 71 Ill. 2d 13, 21, 373 N.E.2d 1332 (1978).

In *Shellstrom*, as in this case, an inmate of IDOC brought a complaint for a writ of *mandamus* against the Director of IDOC, challenging the three-year term of mandatory supervised release included in his sentence. The inmate alleged he never was advised of the term of mandatory supervised release and that the term did not appear on the judgment order. *Shellstrom*, 345 Ill. App. 3d at 176. When interpreting the Code's *mandamus* sections, the Second District held that the *mandamus* procedure outlined by the Code, regarding notice to the defendant, reply pleadings, and possible amendments, must be followed even if the complaint has no merit. *Shellstrom*, 345 Ill. App. 3d at 179. The court concluded the omission of a specific summary dismissal section precluded trial courts from dismissing *mandamus* complaints *sua sponte*. *Shellstrom*, 345 Ill. App. 3d at 177. The court

expressly disagreed with *Mason*, an earlier Fourth District case affirming a trial court's *sua sponte* dismissal of a complaint for *mandamus*.

The Second District also has reversed summary dismissals of *habeas corpus* petitions and petitions for relief from judgment filed pursuant to section 2—1401 of the Code (735 ILCS 5/2—1401 (West 2002)). *People v. Winfrey*, 347 Ill. App. 3d 987 (2004) (*sua sponte* dismissal of *habeas corpus* petition improper, regardless of the petition's lack of merit, without notice to petitioner or affording the petitioner an opportunity to respond); *People v. Pearson*, 345 Ill. App. 3d 191, 196-97, 802 N.E.2d 386 (2003) (summary dismissal of a section 2—1401 petition was improper because lack of notice and opportunity to respond undermined the proceedings to the extent the court could not conclude petitioner was not prejudiced).

In *Mason*, the Fourth District based its decision on the trial court's "inherent" authority to control its docket. The court said:

> "[T]rial courts may evaluate such petitions to determine their sufficiency, particularly when filed by [IDOC] inmates. In so concluding, we take judicial notice of our own records, which show an ever-increasing number of appeals brought by inmates in such cases, as well as the fact that [IDOC] currently houses over 46,000 inmates. The potential to overwhelm the courts and the civil justice system by the filing of groundless [IDOC] inmate *mandamus* petitions is clear and real, and one first step to deal with this situation is to recognize the trial court's authority to evaluate such petitions for their sufficiency." *Mason*, 332 Ill. App. 3d at 840.

The Fourth District cited three cases in support of *sua sponte* dismissals, although none of the cases involves failure to issue summons.

In *Barrett v. Guaranty Bank & Trust Co.*, 123 Ill. App. 2d 326, 260 N.E.2d 94 (1970), the plaintiff appealed the summary dismissal of his complaint after the trial court entered the order without an appearance, answer, or motion by the defendant. The trial court dismissed the complaint for failure to state a cause of action, but gave no further explanation of its ruling. On appeal, this court reviewed the trial court's dismissal procedure and determined a trial court could consider "the sufficiency of a pleading on its own initiative *** if for no other reason than to determine the sufficiency óf the evidence." *Barrett*, 123 Ill. App. 2d at 330. The court said:

> "It is also true that a trial court need give no reasons for its rulings and although in cases such as this where the issues are not clearly formed by the pleadings, the better practice might well be to advise counsel of such reasons, the failure to do so does not result in error. ***
>
> Even though we believe the procedure could have been more ef-

fective, nevertheless we believe that the issue relating to the failure of the complaint to state a cause of action is properly before us. To hold otherwise would require us to reverse the judgment of the trial court without considering or being able to consider the very issue decided by the trial court." *Barrett*, 123 Ill. App. 2d at 330-31.

In *Rhodes v. Mill Race Inn, Inc.*, 126 Ill. App. 3d 1024, 1028, 467 N.E.2d 915 (1984), the trial court, on its own motion, dismissed a count against the defendant, who had not filed an appearance or motion to dismiss. The Second District affirmed the dismissal, finding the complaint failed to state a cause of action against the defendant. The court said, "[t]he failure of a complaint to state a cause of action is a fundamental defect which may be raised at any time by any means and cannot be waived." *Rhodes*, 126 Ill. App. 3d at 1028, citing *People ex rel. Defanis v. Futia*, 56 Ill. App. 3d 920, 925, 373 N.E.2d 530 (1978).

In *Mitchell v. Norman James Construction Co.*, 291 Ill. App. 3d 927, 937-38, 684 N.E.2d 872 (1997), this court again recognized a trial court's authority to *sua sponte* strike a substantively insufficient claim or dismiss a complaint that fails to state a cause of action. However, in *Mitchell*, this court vacated the dismissal, even though it found the dismissed counts were conclusory and substantively insufficient, because the trial court should have struck the counts and ordered the plaintiff to replead instead. *Mitchell*, 291 Ill. App. 3d at 938.

Following *Mason*, the Fourth District later affirmed the summary dismissal of a section 2—1401 petition for relief from judgment (735 ILCS 5/2—1401 (West 2002)), brought by a committed, sexually dangerous person. *People v. Bramlett*, 347 Ill. App. 3d 468 (2004).

Although the Second District in *Shellstrom* acknowledged that the increasing volume of inmate *mandamus* requests "is a real concern for trial courts" (*Shellstrom*, 345 Ill. App. 3d at 178), the court rejected the reasoning in *Mason*:

"[W]e should not attempt to remedy this concern by reading into the *mandamus* statute a summary dismissal procedure that is not there. The procedural framework of *mandamus* actions is not a policy issue for the courts to decide but, rather, a legislative decision to be made by the General Assembly. Accordingly, it is the province of the legislature, not the judiciary, to amend the statute to allow for summary dismissals." *Shellstrom*, 345 Ill. App. 3d at 178.

We disagree with the Second District's conclusions in *Shellstrom*, *Pearson*, and *Winfrey*. The purpose of the relevant sections in the *mandamus* statute is to protect a defendant from adverse judgment absent notice or the opportunity to defend. We do not see how the failure to follow these procedures prior to dismissal prejudiced

plaintiff. Typically, it is the unserved party that challenges the subsequent court action if it adversely affects that party's interests. See, *e.g.*, *Belleville Toyota, Inc.*, 199 Ill. 2d 325, 770 N.E.2d 177. We have found no case outside the Second District in which the plaintiff was allowed to challenge a trial court order because of lack of service on the defendant.

When a court fails to follow these notice requirements, the Director of IDOC, not the inmate, is denied the protection of notice and the opportunity to defend the complaint against him. Here, the Director of IDOC needed no such protection; he emerged victorious. On appeal, the Director has accepted the court's dismissal and, in fact, contends we should affirm it.

Plaintiff does not explain how the court's deviation from procedure prejudiced him, other than asking, "How can a petitioner present his substantive claim to a reviewing court from an order and a record like the one in this case?" There is no need to further develop the record, because plaintiff's complaint does not raise any questions of fact or issues of law. Plaintiff's *mandamus* request requires only the application of the mandatory supervised release section of the Uniform Code of Corrections. See 730 ILCS 5/5—8—1(d) (West 2002).

If the court had issued a summons, defendant would have been required to file a responsive pleading on or before the date specified by the summons. 735 ILCS 5/14—103 (West 2002). Even if defendant had failed to respond in accordance with the Code, the plaintiff would not have automatically won *mandamus* relief. Section 14—103 of the *mandamus* statute provides in part, "If the defendant defaults, judgment by default *may* be entered by the court." (Emphasis added.) 735 ILCS 5/14—103 (West 2002). We take "may" to be a permissive term. We hold the trial court has discretion to deny a complaint for *mandamus* even if the defendant fails to challenge it.

In this case, we find no prejudice to plaintiff resulted from the trial court's failure to follow the Code strictly. Perhaps under different circumstances, a defendant might file pleadings acknowledging his duty to fulfill the plaintiff's *mandamus* request; a *sua sponte* dismissal would prevent that from occurring. Even under those circumstances, an order granting *mandamus* would be improper, because *mandamus* will not issue when the record shows the person whose compulsion is sought is willing to perform the act freely. *People ex rel. Courshon v. Hirschfield*, 43 Ill. App. 3d 432, 437, 357 N.E.2d 673 (1976). Regardless, we know that possibility does not exist in this case.

Plaintiff has not raised any legal argument or cited legal authority to support the substantive merit of his complaint, in which he alleged his term of mandatory supervised release must run concurrently with

his other prison terms. That is because there is none. His claim is frivolous. Failure to raise arguments or cite supporting legal authority is a violation of Supreme Court Rule 341 (188 Ill. 2d R. 341(e)(7)) and we may consider those issues waived. *Dillon v. Evanston Hospital*, 199 Ill. 2d 483, 493, 771 N.E.2d 357 (2002).

Waiver aside, we have reviewed plaintiff's contentions and find his complaint is without merit. Terms of mandatory supervised release are imposed by statute "in addition" to imprisonment and cannot be stricken by the courts. See *People v. Russell*, 345 Ill. App. 3d 16, 22, 801 N.E.2d 977 (2003), citing 730 ILCS 5/5—8—1(d)(2) (West 1998).

If the trial court had followed the Code and defendant had been served, plaintiff would be in the same position he now is in. Dismissal of his complaint was inevitable. Plaintiff requests this court to reverse and remand for further proceedings. Such action would have little remedial effect, only delaying dismissal. *Cf. Board of Education of School District 85¹/₂ v. Idle Motors, Inc.*, 339 Ill. App. 359, 364, 90 N.E.2d 121 (1950) (" 'The Appellate Court will not reverse the judgment of a lower court when it can determine from the record that the judgment is the only one which could properly be rendered' "), quoting *People v. City of Olney*, 322 Ill. App. 43, 48 (1944).

We agree with the trial court's conclusion that plaintiff did not demonstrate anything close to a clear, affirmative right to relief, the *sine qua non* for *mandamus*. There was nothing plaintiff could do to make it any better. He simply was off the track and could not get back on. We do not believe the legislature intended to require judges and clerks to jump through useless hoops aimed toward impossible goals. This judge did not improperly characterize plaintiff's action as a post-conviction petition, as the trial judge did in *Shellstrom*. This judge apparently saw the plaintiff's complaint for what it was—a totally deficient claim for *mandamus* relief.

We hold a trial judge has the inherent authority to dismiss a patently frivolous *mandamus* complaint before service on the defendant is issued. But we urge trial judges to use this power with caution, especially in cases related to criminal proceedings. We also suggest trial judges give reasons for early dismissals, for the benefit of the losing litigant and for those called on to review trial court orders.

CONCLUSION

We affirm the judgment of the circuit court.

Affirmed.

CAHILL and BURKE, JJ., concur.