2015 IL App (3d) 140470

Opinion filed April 15, 2015

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2015

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | Appeal from the Circuit Court |
| | ) | of the 12th Judicial Circuit, |
| LORI ROCHA, n/k/a Lori Jenco, | ) | Will County, Illinois. |
| | ) | |
| Petitioner-Appellee, | ) | |
| | ) | Appeal No. 3-14-0470 |
| and | ) | Circuit No. 97-D-9725 |
| | ) | |
| STEPHEN ROCHA, | ) | Honorable |
| | ) | David Garcia |
| Respondent-Appellant. | ) | Judge, Presiding. |

JUSTICE WRIGHT delivered the judgment of the court, with opinion.
Justices Holdridge and O'Brien concurred in the judgment and opinion.

**OPINION**

¶ 1     The 1998 "Judgment for Dissolution of Marriage" involving petitioner, Lori Rocha, and respondent, Stephen Rocha, required Stephen to pay child support to Lori in the amount of $150 per week. Fifteen years later, the trial court entered a written order granting Lori's 2012 petition under section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2012)) to vacate prior court orders based on the court's finding that Stephen fraudulently concealed his income and employment from the court beginning in 2003.

¶ 2　　First, Stephen appeals the finding of fraud. Second, while Stephen agrees the amount of child support was recalculated using accurate income information beginning in 2003, he challenges the trial court's order requiring him to pay support prior to Lori's 2010 petition to increase support and interest on the unpaid support, as recalculated from May 12, 2003, to December 31, 2012. We affirm and remand with directions.

¶ 3　　　　　　　　　　　　　　　　　FACTS

¶ 4　　　　　　　　　　　　I. Judgment of Dissolution and Child Support

¶ 5　　On May 22, 1998, the trial court entered a "Judgment for Dissolution of Marriage" dissolving the marriage between Lori and Stephen. The judgment ordered Stephen to pay child support for the parties' minor child in the amount of $150 per week, based on the statutory guidelines for Stephen's earning capacity as determined by the court at that time. According to the judgment, Stephen accrued a child support arrearage in the amount of $1,056, which was to be paid at the rate of $50 per week.[1]

¶ 6　　On January 18, 2001, Stephen filed a *pro se* motion to reduce child support alleging he applied for unemployment benefits. One week later, on January 25, 2001, the court reduced Stephen's child support payments to $74.40 per week due to his unemployment status.

¶ 7　　On April 27, 2001, Lori filed a section 2-1401 petition seeking to vacate the January 25, 2001, order reducing Stephen's child support payment to $74.40 per week. 735 ILCS 5/2-1401 (West 2000). Lori's section 2-1401 petition alleged Stephen failed to advise the court that his prior employer, Ford Motor Company, was supplementing his unemployment benefits, such that Stephen continued to receive approximately 95% of his previous weekly pay. On May 16, 2001, the court entered an agreed order vacating the January 25, 2001, order reducing Stephen's child

---

[1]The judgment provided that Stephen dissipated marital assets as well.

support and ordered Stephen to resume paying child support at the rate of $150 per week, the amount of child support ordered by the court in the 1998 judgment of dissolution.

¶ 8            II. 2002 Contempt Proceedings for Nonpayment of Child Support

¶ 9            Approximately 18 months later, on October 24, 2002, Lori filed a "Petition for Rule to Show Cause," alleging Stephen failed to pay support as ordered by the court at the rate of $150 per week, resulting in an arrearage exceeding $11,000. On December 10, 2002, the court found Stephen in indirect civil contempt and ordered him to pay the full amount of $13,689.16 by December 13, 2002, to purge the finding of contempt.

¶ 10            On December 16, 2002, Stephen tendered a check in the amount of $5,000 to be applied to the $13,689.16 purge amount and advised the court he was employed by Vector Corporation. The court continued the matter to January 31, 2003, for "sentencing/purge" and ordered Stephen to provide proof of employment to the court on that date.

¶ 11            By January 31, 2003, Stephen fell behind in current support in the additional amount of $1,050 after the December 16, 2002, court date. On January 31, 2003, Stephen's counsel advised the court Stephen left his employment with Vector Corporation. According to Stephen's attorney, Stephen taught a course at a community college and anticipated he would receive $820 for eight weeks of teaching. The court ordered Stephen to pay $1,050 within the next 21 days and ordered him to maintain a job diary showing three entries per day.

¶ 12            On March 6, 2003, Stephen returned to court. However, Stephen did not tender a completed job diary to the court as ordered. Instead, Stephen informed the court he was now employed by his father earning $300 per week. Stephen made a partial payment of $700 to the court clerk, rather than the entire $1,050 as ordered on January 31, 2003.

¶ 13        On the next court date, April 22, 2003, the court found Stephen failed to purge the finding of indirect civil contempt.  Thereafter, Stephen tendered a check in the amount of $1,100 in open court "against his current support obligation."  Thus, the court ordered Stephen to pay another lump sum within the next 14 days, specifically $1,200, in order to reduce the arrearage.  Once again, the court ordered Stephen to return to court with a completed job search diary containing at least 10 contacts with prospective employers per week.  The court continued the matter for "recalculation of arrearages [and] status of employment," to May 29, 2003.

¶ 14        On May 29, 2003, although outside the 14-day deadline set by the court on April 22, 2003, Stephen paid $1,200 toward the arrearage, as previously ordered by the court.  The court ordered Stephen to "stay current on his child support obligation" and "continue to maintain a job search diary with not less than 10 contacts per week."  The court again continued the matter for "final setting of arrearages, payment on arrearages, status of employment *** and sentencing."

¶ 15        On July 29, 2003, the date scheduled to set the "final" amount of the arrearage, the court heard arguments concerning the proposed payment schedule for Stephen's arrearage and the status of Stephen's contempt purge provisions.  The court observed it was "not inclined" to reduce Stephen's child support obligation below $150 per week because Stephen voluntarily left his employment with Ford Motor Company in order to attend school.  Further, the court found there was "no question" Stephen was attempting to avoid his support obligations.  The court set Stephen's "final" child support arrearage in the amount of $7,739 and ordered him to pay $1,000 to reduce that amount within seven days of July 29, 2003.  In addition, beginning August 8, 2003, the court ordered Stephen to pay "the sum of $100.00 per week towards the child support

4

arrearage over and above the $150.00 per week [for] current child support." The court also ordered Stephen to pay Lori's attorney fees in the amount of $1,665.50.[2]

¶ 16    It is unclear from the record whether Stephen paid the $1,000 to reduce the arrearage as ordered. No other enforcement actions are evident of record for the next seven years after August 8, 2003, until Lori filed a request to increase child support in 2010.

¶ 17                    III. Child Support Proceedings, 2010 Through 2014

¶ 18    The record contains Lori's "Petition to Establish Support," filed with the court on March 2, 2010. On April 6, 2011, by agreement of the parties, the court significantly increased Stephen's support obligation to $493.67 per biweekly pay period, based on Stephen's reported net income as a hospital employee[3] of $64,177 per year. The order reserved "calculation of [Stephen's] support arrearage" and the "retroactivity of said award shall be at least 3/8/2010 [sic], further retroactivity."[4]

¶ 19    On November 1, 2011, Lori filed a section 2-1401 petition to vacate and later amended this petition on September 25, 2012. Lori requested the court to vacate the May 29, 2003, and July 29, 2003, orders due to Stephen's fraud. Lori further alleged Stephen admitted, during his deposition on April 5, 2011, that his employment at Porter Memorial Hospital began before the court's entry of the May 29, 2003, order. Lori also alleged she exercised due diligence to bring Stephen's fraudulent concealment to the court's attention as soon as she discovered his employment.

---

[2] According to Lori's subsequent testimony, Stephen failed to pay Lori's attorney fees as ordered by the court on July 29, 2003.

[3] It appears that Stephen was consistently employed by Porter Memorial Hospital from 2003 until the date of the hearing on Lori's second amended section 2-1401 petition in 2013, but the record is incomplete in this regard.

[4] In addition, the court ordered Stephen to pay 20% of any income exceeding his base pay as additional support and to turn over copies of his tax returns within 14 days of filing.

¶ 20 On June 5, 2013, the trial court conducted a hearing on the merits of Lori's second amended section 2-1401 petition to vacate. The court found the May and July 2003 orders clearly revealed the court was waiting for notification from Stephen concerning the status of Stephen's employment in order to set the appropriate child support award. The court stated, "[I]t was certainly fraud. Everybody was expecting [Stephen] to speak up. I think he had a duty to speak up. He didn't and just put everything in kind of holding." The court continued, "[Stephen] can't certainly stand there silent when his attorney is making representations that are just totally false and inaccurate." After finding fraud existed, the court requested the parties to present evidence concerning Lori's due diligence to determine whether retroactive support would begin in 2003 or 2010.

¶ 21 Lori testified that, after the court's July 2003 order requiring Stephen to pay $100 per week toward his arrearage and continuing Stephen's child support at $150 per week, she suffered serious financial difficulties and was unable to afford to hire an attorney to compel Stephen to appear in court in spite of the growing amount of unpaid child support. According to Lori, between 2003 and 2010, Stephen continued to pay less than the full amount of court-ordered child support. According to Lori's testimony, in March 2010, the parties' son told Lori that Stephen had a number of cars "hidden" from Lori. In addition, Lori's current husband discovered Stephen's resume on a website which indicated Stephen had been employed prior to the May 29, 2003, court hearing.[5]

¶ 22 After Lori's testimony, the court concluded Lori was a credible witness. The court found Stephen's actions "frustrated" Lori's attempt to collect child support. The court also noted that Stephen was able to successfully conceal the fact that he was gainfully employed because

---

[5] Around the same time in 2010, Lori contacted her attorney to help obtain an order of protection against Stephen based on threats he made to Lori.

Stephen resided in Indiana and he avoided contact with Lori because Stephen's parents transported the child from Lori's house for purposes of Stephen's visitation. The court concluded that if due diligence was required, the court would enter a finding that Lori exercised due diligence.

¶ 23    Following the court's ruling, Stephen elected to testify. Stephen testified that Lori dropped the parties' child off at Stephen's parents' house in Illinois for purposes of visitation. Stephen advised the court that he stayed away from Lori's house to avoid conflict and aggravation and he ignored Lori's attempts to communicate with him for the same reason. Stephen also testified he did not disclose his job with Porter Memorial Hospital to the court in May or July 2003 because he was on a 90-day probation period and he could be terminated for missing one day of work during the probationary period.

¶ 24    Stephen admitted he stopped working for his father before the May 2003 court date and was working at the hospital at the time of the court hearing. Stephen explained to the trial court that he failed to advise the court of his new employment when he was before the judge in 2003 because "he wasn't asked." He also explained to the court that he did not pay the full amount of child support because he did not know he had been ordered by the court to pay an increased weekly amount of $250, which included an additional weekly amount of $100 to reduce the arrearage.

¶ 25    After Stephen's testimony, the court noted Stephen was not a credible witness because Stephen testified he had no knowledge of the prior court order requiring him to pay $250 per week. Judge Baron stated Stephen's "previous remarks are going to stand." The court stated that "from an equitable point of view *** fairness dictates that we retro this case back to the July

7

order and then deal with it." The court reiterated and emphasized that the court believed Stephen tried to hide information for purposes of minimizing his child support obligations.

¶ 26 On June 21, 2013, Judge Baron entered a written order finding Stephen had a duty to disclose his employment with Porter Memorial Hospital on both May 29 and July 29, 2003, but failed to do so. The court found Stephen's failure to disclose his employment in 2003 constituted a fraud by omission. Therefore, the court ordered that Stephen's support obligation would "retroactively increase" beginning "back to the date of the fraud" in May 2003.

¶ 27 The court also found that Lori was not required to exercise due diligence between May 29, 2003, and March of 2010 to expose Stephen's fraudulent misrepresentations, but, alternatively, if due diligence was required during that time, Lori did exercise due diligence to attempt to discover Stephen's dishonesty. The court further found Lori exercised due diligence between March 2010, the date of her petition to increase support, and June 21, 2013, the date of the hearing on her second amended section 2-1401 petition to vacate the 2003 orders.

¶ 28 The court granted Lori's second amended section 2-1401 petition to vacate the May 29 and July 29, 2003, orders and ordered Stephen to turn over true and accurate copies of his state and federal income tax returns from 2003 through 2012 within 21 days. The court ordered that Stephen's "support obligation shall be retroactively modified back to May 12, 2003, so that [Stephen] pays the exact child support that would have been due." The matter was continued for another court date to determine the exact amount of arrearages.

¶ 29 Judge Garcia conducted a hearing to determine Stephen's child support arrearage on May 9, 2014. During the hearing, Lori's counsel indicated to the court that, although Stephen remained behind on his child support payments, Lori's counsel "didn't even bother with that [calculation of the cumulative arrearage based on $150 per week for current support] because of

8

the way this case worked out." Lori's counsel also informed the court that Stephen failed to pay the arrearage amount from 2003, but that the parties "never calculated that" amount.

¶ 30 After hearing arguments, the court entered an order fixing the amount of the arrearage, based on accurate income information, dating back to May 12, 2003. The court's written order indicates the parties agreed "to the support and interest calculations as contained on JT Ex #1 which was entered by agreement, but [the parties were] not [in agreement] that an award of interest is proper." Based on the agreed income information, the court determined Stephen "owes the sum of $32,419.47 in retroactive child support from May 12, 2003, to December 31, 2012, as set forth in JT Ex #1."[6] The court further found Stephen "owes the sum of $17,460.77 in interest on the above arrearage [from May 12, 2003] through April 30, 2014, as set forth in JT Ex #1."[7] The court reserved the question of whether any arrearage existed from January 1, 2013, to date, but indicated that its order constituted a final and appealable order "as to the issues decided herein and the order of 6-21-13." In total, the court determined Stephen owed Lori in the amount of $50,060.24 for child support and interest. Stephen appeals.

¶ 31 ANALYSIS

¶ 32 At the onset, we note Stephen's appellate counsel has not provided this court with a complete and accurate statement of facts as required by Rule 341(h)(6). Ill. S. Ct. R. 341(h)(6) (eff. Feb. 6, 2013). Nonetheless, we are mindful that the arrearage of unpaid child support, calculated by any method, is significant due to Stephen's history of nonpayment. Therefore, rather than striking Stephen's brief and directing him to refile a brief which meets the

---

[6] "JT Ex #1," the exhibit filed by the parties while in court on May 9, 2014, suggests Stephen overpaid child support in 2003 in the amount of $2,291.20. Nonetheless, the parties agreed Stephen owed $32,419.47 in retroactive child support as a result of his employment with Porter Memorial Hospital and credited him for that overpayment.

[7] The trial court mistakenly transposed the figure for interest. The correct figure, based on the exhibit and discussion on the record, is $17,640.77.

9

requirements, we elect to reach the merits of Stephen's appeal without further delay. We also note Lori has not filed a response brief and conclude the issues at hand are not complicated and can be addressed by this court based on the record. See *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128 (1976).

¶ 33    The first issue raised by Stephen on appeal pertains to the finding of fraud by the trial court. Stephen argues the court's finding was contrary to the evidence presented to the court. In addition, Stephen contends the trial court improperly awarded "retroactive" child support plus interest that predated Lori's March 2, 2010, petition to increase support. We address each contention individually below.

¶ 34    The case law provides that when the trial court grants a section 2-1401 petition after an evidentiary hearing, as in the case at bar, a reviewing court will not disturb the trial court's findings unless they are against the manifest weight of the evidence. *In re Marriage of Roepenack*, 2012 IL App (3d) 110198, ¶ 35. In this case, during the hearing on the merits of Lori's second amended section 2-1401 petition, Stephen admitted he failed to disclose his employment at Porter Memorial Hospital when he appeared before the court on both May 29, and July 29, 2003. After admitting he did not give truthful information to the court, Stephen attempted to provide an explanation for his omission.

¶ 35    First, Stephen explained he did not provide this information to the court because he was not directly asked about the status of his employment during either court proceeding. Further, Stephen stated he did not disclose his employment in 2003 because his employment was subject to a 90-day probationary period and he could have been terminated without cause. The court was not persuaded by Stephen's testimony regarding his justifications for remaining silent about his current employment from 2003 to 2011, the date of his deposition. Consequently, the trial

10

court found Stephen's "conscious act" to withhold information from the court constituted a fraud upon the court.

¶ 36    We note Judge Baron was uniquely qualified to make this finding based on his extensive history with this case. For example, on December 10, 2002, the trial court found Stephen in indirect civil contempt for failing to pay past-due support. The court ordered Stephen to pay $13,689.16 to purge the finding of indirect civil contempt. Six days later, on December 16, 2002, Stephen paid $5,000 to reduce the balanced owed to Lori. Due to Judge Baron's intensive oversight, Stephen paid approximately $8,000 in various lump-sum payments during the seven months between December 10, 2002, and the status hearing regarding Stephen's ability to purge the contempt on July 29, 2003. Nonetheless, after monitoring Stephen for seven months, Judge Baron abandoned his efforts to require Stephen's frequent appearance in court to update the court on his search for employment. Consequently, on July 29, 2003, Judge Baron adopted a different approach and ordered Stephen to make regular weekly payments in the amount of $100 toward the arrearage in lieu of continued frequent trips to the court to report on his job status. Unbeknownst to Judge Baron on July 29, 2003, Stephen had been steadily employed at Porter Memorial Hospital since May 12, 2003.

¶ 37    Clearly, if Stephen had been forthright and advised the judge that he became gainfully employed on May 12, 2003, the court may have ordered Stephen to use some of his new income to pay down the remaining 2002 arrearage on a swifter timeline. Further, if Lori had known Stephen obtained steady employment in 2003, perhaps she would have requested an increase in child support long before 2010 or at least requested the court to order higher monthly payments on the arrearage. Certainly, Stephen enjoyed his income from the hospital for many years without any concern that he might be required to apply a portion of his income to reduce the

11

arrearage. Therefore, we affirm the trial court's finding that Stephen consciously committed fraud upon the court by failing to truthfully reveal the status of his employment during court proceedings in 2003.

¶ 38        Next, we consider Stephen's strained and unsupported contention that the trial court could not properly order Stephen to pay "retroactive" child support predating 2010. Stephen's argument does not take into consideration his deliberate fraud which began in 2003. Certainly, the trial court was confronted with an unusual set of circumstances that are, hopefully, very atypical. Under these unusual circumstances, the court relied on the agreed amount for the unpaid child support from 2003 until 2012, as calculated by the parties, based on Stephen's accurate income information. In this case, the court's judicious approach properly put Lori in the position she would have been in, based on the statutory guidelines, had Stephen truthfully disclosed his employment to the court in 2003.

¶ 39        This approach employed by the court served to defeat Stephen's attempts to continue to benefit from his ongoing, long-term, fraud which remained undetected by the court for seven years. The approach Stephen requests this court to adopt on appeal, that is, beginning the correctly calculated child support in 2010, would reward him for his dishonesty. Therefore, we affirm the court's decision to remedy the fraud by recalculating child support beginning from the date of the fraud in 2003.

¶ 40        Finally, we consider whether the trial court should have ordered Stephen to pay interest on the agreed amount of $32,419.47 for past-due child support that accumulated over the seven years of fraudulent concealment of his true employment status.[8] Section 505(b) of the Illinois Marriage and Dissolution of Marriage Act provides authority for the trial court to assess simple

---

[8] Based on our review of the record, it appears Lori did not request, and the trial court did not order, any interest on the arrearage last fixed in the amount of $7,739 by the court on July 29, 2003. By all accounts, Stephen never fully paid the 2002 arrearage, which generated a finding of indirect civil contempt in 2002.

interest at the rate of 9% per annum on any unpaid child support obligations which become due and remain unpaid for 30 days or more. 750 ILCS 5/505(b) (West 2010). Based on this statute, we conclude the trial court properly ordered Stephen to pay interest on unpaid child support in the amount of $32,419.47, dating back to May 2003.

¶ 41    Consequently, we affirm the trial court's order finding Stephen committed a fraud on the court in 2003. We also affirm the order requiring Stephen to pay unpaid child support, as calculated based on accurate income information, in the amount of $32,419.47 plus interest of $17,640.77. Finally, we remand the matter to the trial court with directions to address the proper method of payment of the unpaid child support obligations plus interest.

¶ 42                                    CONCLUSION

¶ 43    For the foregoing reasons, the judgment of the circuit court of Will County is affirmed and remanded with directions.

¶ 44    Affirmed and remanded with directions.