NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2023 IL App (4th) 220439-U

NO. 4-22-0439

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
February 24, 2023
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | Appeal from the |
| LISA PARMENTER, f/k/a LISA N. JONES, | ) | Circuit Court of |
| Petitioner-Appellee, | ) | Sangamon County |
| and | ) | No. 10D136 |
| AARON M. JONES, | ) | |
| Respondent-Appellant. | ) | Honorable |
| | ) | Jennifer M. Ascher, |
| | ) | Judge Presiding. |

JUSTICE ZENOFF delivered the judgment of the court.
Justices Harris and Steigmann concurred in the judgment.

**ORDER**

¶ 1     *Held*:  The trial court's dismissal of respondent's second amended motion to vacate the judgment of dissolution of marriage and other orders as time-barred was affirmed.

¶ 2     Respondent, Aaron M. Jones, brings this appeal pursuant to Illinois Supreme Court Rule 304(b)(3) (eff. Mar. 8, 2016). Rule 304(b)(3) allows interlocutory appeals from a judgment denying any relief requested in a petition filed pursuant to section 2-1401 of the Code of Civil Procedure (Code) (735 ILCS 5/2-1401 (West 2020)). Aaron appeals the order of the circuit court of Sangamon County dismissing as time-barred his second amended motion to vacate the judgment of dissolution of marriage (JDOM) entered on March 11, 2010, and certain subsequent orders entered during the parties' 12-year course of litigation. Aaron contends that the court's orders were obtained by fraud and were therefore void, thus avoiding section 2-1401's two-year statute of limitation. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4          We present those facts relevant to the issues in this appeal. We will present additional facts in the analysis section as necessary. The parties were married on July 17, 2009. One minor child was born to the parties. On February 22, 2010, petitioner, Lisa N. Parmenter, f/k/a Lisa N. Jones, *pro se*, filed a petition for dissolution of marriage alleging irreconcilable differences. On February 22, 2010, Aaron filed an "Appearance and Consent," waiving service of summons and conferring on the court "full and complete jurisdiction" over himself "as a party defendant to hear, try and determine the issues involved." In the "Appearance and Consent," Aaron also consented to an "immediate" hearing and to "any and all other proceedings that may be had and entered in this cause without notice to [Aaron]." The appearance and consent was notarized. Aaron concedes that his signature on the document is genuine.

¶ 5          Lisa proved up her petition for dissolution of marriage on March 11, 2010. At that hearing, the trial court approved the parties' settlement agreement and joint parenting agreement. The JDOM indicated that it was signed by the parties on March 11, 2010, and the common law record shows that it was filed on March 11, 2010. The record also shows that Lisa served Aaron with the JDOM on that date.

¶ 6          Between March 11, 2010, and January 2021, Aaron filed numerous pleadings, including petitions for visitation, to modify visitation and child support, and for rules to show cause. Aaron also participated, either *pro se* or by counsel, in court conferences and hearings over those years.

¶ 7          On January 21, 2022, Aaron, acting *pro se*, filed a "Motion to Vacate." Later that day, Aaron filed an amended motion to vacate. Then, on January 31, 2022, Aaron, who was still proceeding *pro se*, filed a second amended motion to vacate seeking the following relief:

(1) vacate his "Appearance and Consent," (2) vacate the child support order of August 26, 2010, (3) vacate the JDOM, and (4) determine the amount of Aaron's monetary damages resulting from Lisa's fraud. Specifically relevant to this appeal, Aaron alleged:

"1. Prior to [Lisa] filing the Petition for Judgement [*sic*] of Dissolution of Marriage she and I agreed after viewing my January 2010 pay stub that my net income was $977 bi-monthly.

2. On 6 February 2010 I signed an Appearance and Consent.

3. Before filing the Petition for Judgement [*sic*] of Dissolution of Marriage [Lisa] changed the amount of child support on the agreement from $390.80 per month (20% of $977 bi-monthly) to $690 bi-monthly. I could not have known that [Lisa] would so egregiously forge the agreement before presenting it to the court. I believe that her intentional forgery voided the Appearance and Consent filed on 22 Feb [*sic*] 2010."

¶ 8    On February 10, 2022, Lisa filed a motion to dismiss Aaron's second amended motion to vacate. The parties treated the second amended motion to vacate as a petition filed pursuant to section 2-1401 of the Code (735 ILCS 5/2-1401 (West 2020)). Lisa moved to dismiss under both section 2-615 (735 ILCS 5/2-615 (West 2020)) and section 2-619 (735 ILCS 5/2-619 (West 2020)) of the Code. Lisa's bases for dismissal were that the second amended motion to vacate was (1) untimely, having been filed more than two years after the entry of the orders and pleadings sought to be vacated; (2) barred by section 510(a) of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/510(a) (West 2020)), which governs the modification of maintenance and child support orders; and (3) facially deficient because it failed to allege a change in circumstances as grounds for modification of the child support orders.

¶ 9        On April 13, 2022, the trial court heard arguments on Lisa's motion to dismiss. Aaron was represented by counsel at this hearing. Aaron argued that the two-year statute of limitation for bringing a section 2-1401 petition did not apply because the court lacked subject matter and personal jurisdiction due to Lisa's fraud. Aaron asserted that because the JDOM was procured by fraud, all of the court's subsequent orders were void. Aaron argued that he had sufficiently pleaded fraud to warrant an evidentiary hearing. The court found that the two-year statute of limitation applied "across the board" and granted Lisa's motion to dismiss.

¶ 10       This timely appeal followed.

¶ 11                              II. ANALYSIS

¶ 12       Aaron contends that he sufficiently pleaded fraud to avoid application of the two-year statute of limitation. Aaron also contends that his second amended motion to vacate pleaded sufficient facts to withstand Lisa's section 2-615 motion to dismiss. Because we determine that the two-year statute of limitation bars Aaron's claims, we affirm the judgment.

¶ 13       Section 2-1401 of the Code establishes a comprehensive procedure to vacate or modify final orders or judgments more than 30 days after their entry. *Mills v. McDuffa*, 393 Ill. App. 3d 940, 945 (2009). Although a section 2-1401 petition is filed in the same proceeding as the original judgment, it is not a continuation of that proceeding but a new proceeding. *Mills*, 393 Ill. App. 3d at 946. Section 2-1401 petitions are subject to civil practice rules. *Mills*, 393 Ill. App. 3d at 946. Such petitions can be dismissed for lack of legal or factual sufficiency. *People v. Vincent*, 226 Ill. 2d 1, 8 (2007). Five dispositions of a section 2-1401 petition are possible. The trial court can dismiss the petition, grant or deny summary judgment, or grant or deny relief after holding an evidentiary hearing. *Vincent*, 226 Ill. 2d at 9. In *Vincent*, our supreme court held that a section 2-1401 proceeding is not equitable in nature and does not confer upon the court

- 4 -

discretion to "do justice." *Vincent*, 226 Ill. 2d at 16. Rather, relief under section 2-1401 is granted upon proof, by a preponderance of the evidence, of a defense or claim that would have precluded entry of the judgment in the original action. *Vincent*, 226 Ill. 2d at 7-8. Additionally, section 2-1401 requires that the petitioner exercise diligence both in discovering the defense or claim and in bringing the petition. *Vincent*, 226 Ill. 2d at 8. Petitions must be filed "not later" than two years after the entry of the order or judgment. *Vincent*, 226 Ill. 2d at 7. We review *de novo* the dismissal of a section 2-1401 petition. *Vincent*, 226 Ill. 2d at 18.

¶ 14        Aaron relies on subsection (f) of section 2-1401, which provides that the statute does not affect relief from a void order or judgment. 735 ILCS 5/2-1401(f) (West 2020). In other words, a void judgment can be attacked at any time, and a motion seeking relief from a void judgment need not comply with the diligence and meritorious-defense requirements of section 2-1401. *In re Marriage of Stefiniw*, 253 Ill. App. 3d 196, 202 (1993).

¶ 15        Judgments entered in civil proceedings can be collaterally attacked as void "only where there is a total want of jurisdiction in the court which entered the judgment, either as to the subject matter or as to the parties." (Internal quotation marks omitted.) *Taylor v. Bayview Loan Servicing, LLC*, 2019 IL App (1st) 172652, ¶ 14. By contrast, a voidable judgment is one that is entered erroneously by a court having jurisdiction, and it is immune from collateral attack. *Taylor*, 2019 IL App (1st) 172652, ¶ 14. After a court acquires jurisdiction, subsequent fraud does not render the order void. *Taylor*, 2019 IL App (1st) 172652, ¶ 15. There are two kinds of fraud. The first is extrinsic fraud, which prevents the court from acquiring jurisdiction. *Falcon v. Faulkner*, 209 Ill. App. 3d 1, 13 (1991). This type of fraud gives the court only "colorable" jurisdiction. *Falcon*, 209 Ill. App. 3d at 13. The second type of fraud is that which occurs after the court acquires jurisdiction, such as perjury or concealment. *Falcon*, 209 Ill. App. 3d at 13. As

- 5 -

we said in *Falcon*, the classic definition of extrinsic fraud refers to circumstances where the unsuccessful party has been "prevented from exhibiting fully his case *** as by keeping him away from court *** or where the defendant never had knowledge of the suit." (Internal quotation marks omitted.) *Falcon*, 209 Ill. App. 3d at 13. Only extrinsic fraud renders a judgment void. *Falcon*, 209 Ill. App. 3d at 13.

¶ 16 Lisa filed a combined section 2-615 and section 2-619 motion to dismiss Aaron's second amended motion to vacate pursuant to section 2-619.1 (735 ILCS 5/2-619.1 (West 2020)) of the Code. A section 2-615 motion to dismiss tests the legal sufficiency of a complaint based on defects apparent on the face of the complaint. *Reynolds v. Jimmy John's Enterprises, LLC*, 2013 IL App (4th) 120139, ¶ 25. The purpose of a section 2-619 motion to dismiss is to dispose of issues of law and easily proved factual issues at the outset of litigation. *Thurman v. Champaign Park District*, 2011 IL App (4th) 101024, ¶ 18. A section 2-619 motion admits all well-pleaded facts as true, together with all reasonable inferences to be gleaned from those facts. *Thurman*, 2011 IL App (4th) 101024, ¶ 18. In ruling on a section 2-619 motion to dismiss, the court must interpret all pleadings and supporting documents in the light most favorable to the nonmoving party. *Thurman*, 2011 IL App (4th) 101024, ¶ 18. The reviewing court must consider whether the existence of a material fact should have precluded dismissal, or whether dismissal was proper as a matter of law. *Thurman*, 2011 IL App (4th) 101024, ¶ 18.

¶ 17 We first examine whether the trial court in our case had subject matter jurisdiction. Subject matter jurisdiction refers to the power of a court to hear and determine cases of the general class to which the proceeding at issue belongs. *McCormick v. Robertson*, 2015 IL 118230, ¶ 19. Lisa filed her petition for dissolution of marriage pursuant to the Act. Courts have subject matter jurisdiction over all justiciable matters. *Belleville Toyota, Inc. v. Toyota Motor*

*Sales, U.S.A., Inc.*, 199 Ill. 2d 325, 334 (2002). Because dissolution of marriage is a justiciable matter, the court here had subject matter jurisdiction (See *In re Marriage of Panozzo*, 93 Ill. App. 3d 1085, 1088 (1981) (stating: "The issue of dissolution of marriage is justiciable so that the circuit court had jurisdiction over the subject matter of the judgment.")

¶ 18        Next, we examine whether the trial court obtained personal jurisdiction over Aaron. Aaron contends that the court obtained only colorable jurisdiction because Lisa procured his appearance and consent by fraud. Although Aaron's second amended motion to vacate— which was not further amended after he obtained counsel—took a scattershot approach aimed at many different orders that were allegedly forged or otherwise said to be fraudulent, we are concerned only with how the court obtained jurisdiction over Aaron.

¶ 19        In considering jurisdiction, it is necessary to look at what Aaron pleaded, as opposed to what he argues he pleaded. A section 2-1401(f) petition seeking relief from a void judgment, although differentiated from the general rules of other section 2-1401 petitions, is nonetheless recognized as a section 2-1401 petition. *Sarkissian v. Chicago Board of Education*, 201 Ill. 2d 95, 104 (2002). Procedurally, a section 2-1401 petition is an initial pleading equivalent to a complaint. *Blazyk v. Daman Express, Inc.*, 406 Ill. App. 3d 203, 207 (2010). An initial pleading must allege specific facts that support each element of a cause of action. *Blazyk*, 406 Ill. App. 3d at 208. The elements of fraudulent misrepresentation are (1) a false statement of material fact, (2) knowledge or belief of the falsity of the statement on the part of the party making the statement, (3) intention to induce the other party to act, (4) the other party's actions in reliance on the truth of the statement, and (5) damages. *Adcock v. Brakegate, Ltd.*, 247 Ill. App. 3d 824, 835 (1993). The plaintiff bears a higher burden when pleading a cause of action for fraudulent misrepresentation. *Board of Education of City of Chicago v. A, C & S, Inc.*, 131 Ill. 2d

428, 452 (1989). A cause of action for fraud must be pleaded with specificity, particularity, and certainty. *Wolford v. Household Finance Corp.*, 105 Ill. App. 3d 1102, 1104 (1982). The pleading must specifically allege "facts from which fraud is the necessary or probable inference, including what representations were made, when they were made, who made the misrepresentations and to whom they were made." (Internal quotation marks omitted.) *Miner v. Fashion Enterprises, Inc.*, 342 Ill. App. 3d 405, 420 (2003).

¶ 20     First, Aaron pleaded that he and Lisa "agreed after viewing my January 2010 pay stub that my net income was $977 bi-monthly." Second, Aaron pleaded that he signed the appearance and consent on February 6, 2010. Third, Aaron pleaded that, unbeknownst to him, Lisa changed the amount of child support in the JDOM from that which they agreed appeared on his pay stub to a greater amount. Fourth, Aaron pleaded that Lisa forged the JDOM before presenting it to the trial court in March 2010. Fifth, Aaron pleaded that he believed this forgery voided his appearance and consent. According to Aaron's pleading, the misrepresentation was the amount of Aaron's income as stated in the JDOM, and the fraud vitiating his appearance was the forgery contained in the JDOM when Lisa presented the JDOM to the court. Aaron did not specifically and particularly plead that Lisa induced him to file an appearance and consent by making a material misrepresentation to him.

¶ 21     Thus, Aaron's reliance on *Roda v. Berko*, 401 Ill. 335 (1948), is misplaced. In *Roda*, the plaintiff sued in equity to set aside a warranty deed. *Roda*, 401 Ill. at 337. The issue was whether the plaintiff's complaint stated a cause of action. *Roda*, 401 Ill. at 337. The complaint alleged that the defendant falsely represented to the plaintiff that he would use the property represented by the deed to build thereon a modern factory. *Roda*, 401 Ill. at 338. The complaint also alleged that the defendant falsely represented to the plaintiff—who was an

elderly, sick woman without facility in the English language—that the deed contained such a condition, when the defendant knew that he or someone else would use the property as a junkyard. *Roda*, 401 Ill. at 338. The complaint further alleged that as a result of the defendant's misrepresentations, the plaintiff issued the deed, and had she known the defendant's true intentions, she never would have sold him the property. *Roda*, 401 Ill. at 338-39. In holding for the plaintiff, our supreme court set forth the elements for rescinding a contract due to fraud: the misrepresentation must be (1) in the form of a statement of a material fact, (2) made for the purpose of inducing the other party to act, (3) false and known by the party making the representation to be false or not reasonably believed by him to be true, and (4) relied and acted upon to the other party's detriment. *Roda*, 401 Ill. at 339-40. Here, Aaron did not plead that Lisa made any misrepresentations that induced him to enter his appearance and consent.

¶ 22      We determine that the trial court acquired personal jurisdiction over Aaron when he filed his appearance and consent. Aaron's signature on that document was notarized, and Aaron admits his signature is genuine. The sequence of events was that Aaron filed an appearance and consent on February 10, 2010, and the JDOM was signed by the parties and filed on March 11, 2010. Aaron pleaded that Lisa misrepresented his income in the JDOM. Lisa did not prove up the divorce and present the allegedly fraudulent JDOM to the court until March 11, 2010. Under Illinois law, a written judgment order is not "entered" until it is entered "of record." *People v. Perez*, 2014 IL 115927, ¶ 29. Here, the JDOM was entered of record on March 11, 2010. Therefore, accepting the facts pleaded as true, the fraud (if any) occurred after the trial court acquired personal jurisdiction. Accordingly, we reject Aaron's argument that the allegedly fraudulent JDOM rendered his appearance and consent void.

¶ 23       The other cases upon which Aaron relies are also inapposite. In *City of Naperville v. Mann*, 378 Ill. App. 3d 657, 661 (2008), the appellate court held that there was no extrinsic fraud, so that case does not support Aaron's contentions. In *In re Adoption of E.L.*, 315 Ill. App. 3d 137, 151 (2000), the appellate court held that the trial court's adoption order was void *ab initio* where the trial court did not obtain personal jurisdiction over the biological father until after the adoption order was entered. Here, by contrast, the challenged orders were entered after the trial court acquired personal jurisdiction. In *Settlement Funding, LLC v. Brenston*, 2013 IL App (4th) 120869, ¶ 40, we held that the Structured Settlement Protection Act and anti-assignment clauses in a structured settlement agreement deprived the circuit court of authority to enter orders approving the transfer of structured payment rights. Here, however, the trial court had authority to enter the orders at issue because it had subject matter jurisdiction over the divorce. In *In re Marriage of Sheetz*, 254 Ill. App. 3d 695, 699 (1993), the appellate court held that certain child support orders were void because they were entered in excess of the trial court's jurisdiction. As noted, the trial court here did not exceed its jurisdiction in entering the orders at issue. In *People v. Ryburn*, this court labeled the defendant's section 2-1401 argument "ridiculous," which is not helpful to Aaron. See *People v. Ryburn*, 378 Ill. App. 3d 972, 976 (2008) (citing *People v. Ryburn*, 362 Ill. App. 3d 870, 875 (2005)). In *Jayko v. Fraczek*, 2012 IL App (1st) 103665, ¶ 1, the issue was the mode of service of a notice to adjudicate a hospital lien. Here, Aaron submitted himself to the court's jurisdiction when he filed his appearance and consent and filed numerous pleadings requesting relief from the court. See *Owens v. Snyder*, 349 Ill. App. 3d 35, 40 (2004) (holding personal jurisdiction can vest in the trial court when a party, by filing pleadings, consents to personal jurisdiction). In *In re Marriage of Rocha*, 2015 IL App (3d) 140470, ¶ 37, the court stated that the husband consciously committed fraud on the trial

court by failing to truthfully reveal his employment status. Here, if indeed Lisa changed the amount of Aaron's income in the JDOM from that agreed upon by the parties, that fact was not concealed from Aaron, as the record reflects that Lisa served him with the JDOM on the day it was entered. In *Hirsch v. Optima, Inc.*, 397 Ill. App. 3d 102, 107 (2009), the petitioner's section 2-1401 petition was based on newly discovered evidence, which is not present in our case. In *Nessler v. Nessler*, 387 Ill. App. 3d 1103, 1110 (2008), the court held that section 2-1401's statute of limitation is tolled during the time that grounds for such relief are fraudulently concealed. Here, Aaron waited until his reply brief on appeal to raise the argument that Lisa fraudulently concealed grounds for section 2-1401 relief. Before the trial court, and in his opening brief on appeal, he maintained that the statute of limitation was inapplicable. Issues raised for the first time in a reply brief will not be considered. *People v. Brooks*, 377 Ill. App. 3d 836, 841 (2007).

¶ 24        Aaron additionally contends that (1) he sufficiently pleaded that a slew of orders entered after the JDOM was filed were fraudulent, (2) "from the inception of this case," he did not receive notice of proceedings, and (3) he was an active member of the United States armed forces entitled to "special considerations." Aaron's arguments are unavailing. First, because the trial court had jurisdiction when the JDOM was entered, orders entered after that date were not void. Second, the record shows that Lisa served Aaron with the JDOM on March 11, 2010. The record also shows that Aaron, either *pro se* or through counsel, participated in 12 years of litigation. As an active litigant, Aaron had access to the court record, making his claim that he had no way of ascertaining the fraud at best improbable. Third, Aaron relies on section 2-1401.1 of the Code (735 ILCS 5/2-1401.1 (West 2020)) to argue that his status as an active member of the military afforded him relief. That statute affords service members relief from *default*

- 11 -

judgments. 735 ILCS 5/2-1401.1(b) (West 2020). Here, as noted, the JDOM was entered after Aaron submitted himself to the court's jurisdiction.

¶ 25          Lastly, Aaron attempts to invoke what he claims are courts' equitable powers under section 2-1401. Aaron asserts that "[g]enuine issues exist *** that *** require[d] the trial court [to have] stepped in and reduce the conflict [between the parties] to protect [Aaron's] rights and to do substantial justice." Aaron argues that this court must not "sit back and watch the conflict continue to unfold and ignore past wrongs." Yet, in *Vincent*, our supreme court termed the belief that section 2-1401 invokes the court's equitable powers, as justice and fairness required, "erroneous." *Vincent*, 226 Ill. 2d at 15. The court explained that after the legislature abolished writs in favor of section 2-1401's statutory scheme, it would be "inaccurate" to view the relief afforded by section 2-1401 in "strictly equitable terms." *Vincent*, 226 Ill. 2d at 16. The court noted that application of the civil practice rules to section 2-1401 petitions "factored out any notions" about a trial court's discretion to "do justice." *Vincent*, 226 Ill. 2d at 16. Consequently, we hold that the trial court had both subject matter and personal jurisdiction and that its orders were not void. Accordingly, the requirements of section 2-1401 apply, and Aaron's second amended motion to vacate is time-barred. Because we so hold, we do not reach Aaron's second issue that his second amended motion to vacate was sufficient to withstand the section 2-615 motion to dismiss.

¶ 26                        III. CONCLUSION

¶ 27          For the foregoing reasons, the judgment of the circuit court of Sangamon County is affirmed.

¶ 28          Affirmed.