# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

**Thurman v. Champaign Park District, 2011 IL App (4th) 101024**

---

| | |
|---|---|
| Appellate Court Caption | LUCAS C. THURMAN and LESLIE J. THURMAN, Plaintiffs-Appellants, v. CHAMPAIGN PARK DISTRICT, a Municipal Corporation, Defendant-Appellee. |
| District & No. | Fourth District<br>Docket No. 4-10-1024 |
| Argued | July 13, 2011 |
| Filed | August 10, 2011 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The Tort Immunity Act immunized defendant park district from liability for ordinary negligence for the injuries plaintiff suffered when he ran into a steel beam hidden by a tarp while playing tennis at defendant's facility, and the complaint was insufficient to state a cause of action for willful and wanton conduct. |
| Decision Under Review | Appeal from the Circuit Court of Champaign County, No. 10-L-28; the Hon. Michael Q. Jones, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on Appeal

Stacey E. Lynch and David V. Dorris (argued), both of Dorris Law Firm, P.C., of Bloomington, for appellants.

Edward F. Dutton (argued), of Park District Risk Management Agency, of Wheaton, and Guy C. Hall, of Dobbins, Fraker, Tennant, Joy & Perlstein, P.C., of Champaign, for appellee.

Panel

JUSTICE McCULLOUGH delivered the judgment of the court, with opinion.

Justices Steigmann and Pope concurred in the judgment and opinion.

**OPINION**

¶ 1    Plaintiffs, Lucas C. and Leslie J. Thurman, filed an action against defendant, Champaign Park District, a municipal corporation, to recover damages for injuries Lucas sustained while playing tennis in defendant's facility. On defendant's motion, the trial court dismissed plaintiffs' action. Plaintiffs appeal, arguing (1) they properly stated a claim upon which relief could be granted and (2) they alleged facts creating a material issue of fact as to whether defendant's conduct was willful and wanton. We affirm.

¶ 2    The record shows defendant operated an indoor tennis facility and suspended an opaque tarp-curtain between its tennis court baseline and the wall of its facility. On February 3, 2010, plaintiffs filed a two-count complaint against defendant. They alleged, on February 7, 2009, Lucas was severely and permanently injured while playing tennis in defendant's facility "when he ran into a structural steel beam that was placed at an angle and hidden by a tarp" erected by defendant. Plaintiffs asserted defendant, "with utter indifference to or conscious disregard for" Lucas's safety, committed the following acts or omissions: (1) failed to properly identify for patrons the structural beams that were concealed by the hanging tarp, (2) failed to provide warning signs of the dangerous condition, (3) failed to provide a reasonably safe tennis court area for its patrons, (4) failed to use ordinary care for Lucas's safety, (5) failed to provide proper and adequate lighting, and (6) failed to adequately pad its structural beams. They maintained defendant's acts or omissions were the proximate cause of Lucas's injuries, resulting in damages to both plaintiffs.

¶ 3    On March 11, 2010, defendant filed a combined motion to dismiss plaintiffs' complaint pursuant to section 2-619.1 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619.1 (West 2008)). It argued it could not be held liable for plaintiffs' claimed injuries because (1) section 3-106 of the Local Governmental and Governmental Employees Tort Immunity Act (Act) (745 ILCS 10/3-106 (West 2008)) made it immune from liability for mere negligence claims that were related to the condition of a recreational property and plaintiffs' allegations,

in both form and substance, constituted "no more than mere negligence"; (2) plaintiffs' allegations were insufficient to establish willful and wanton misconduct as defined in section 1-210 of the Act (745 ILCS 10/1-210 (West 2008)); (3) the structural beams constituted open and obvious conditions for which defendant owed no duty to warn or protect against; and (4) the affidavit of James Spencer, defendant's director of operations, showed it exercised a conscious regard for the safety of its patrons.

¶ 4     On November 22, 2010, the trial court conducted a hearing in the matter. Pursuant to section 2-615 of the Code (735 ILCS 5/2-615 (West 2008)), it granted defendant's motion to dismiss without prejudice, finding plaintiffs failed to sufficiently allege willful and wanton conduct by defendant. Pursuant to section 2-619 of the Code (735 ILCS 5/2-619 (West 2008)), the court allowed defendant's motion to dismiss with prejudice, finding plaintiffs could not allege facts based upon willful and wanton conduct by defendant that would entitle them to relief.

¶ 5     This appeal followed.

¶ 6     On appeal, plaintiffs argue the trial court erred by granting defendant's motion to dismiss. They contend they properly alleged willful and wanton conduct by defendant. Plaintiffs also argue a material question of fact existed as to whether defendant's conduct was willful and wanton.

¶ 7     Section 2-619.1 of the Code (735 ILCS 5/2-619.1 (West 2008)) permits a defendant to file a combined motion to dismiss pursuant to sections 2-615 and 2-619 of the Code (735 ILCS 5/2-615, 2-619 (West 2008)).  A section 2-615(a) motion to dismiss "tests the legal sufficiency of the complaint," while a section 2-619(a) motion "admits the legal sufficiency of the complaint, but asserts affirmative matter outside the complaint that defeats the cause of action." *Kean v. Wal-Mart Stores, Inc.*, 235 Ill. 2d 351, 361, 919 N.E.2d 926, 931-32 (2009). "Under either section of the Code, our standard of review is *de novo*." *Kean*, 235 Ill. 2d at 361, 919 N.E.2d at 932.

¶ 8     Plaintiffs first argue the trial court erred by granting defendant's motion to dismiss pursuant to section 2-615 because they alleged facts sufficient to state a cause of action against defendant. In the context of a section 2-615 motion to dismiss, "[t]he proper inquiry is whether the well-pleaded facts of the complaint, taken as true and construed in a light most favorable to the plaintiff, are sufficient to state a cause of action upon which relief may be granted." *Loman v. Freeman*, 229 Ill. 2d 104, 109, 890 N.E.2d 446, 451 (2008). "In ruling on a section 2-615 motion, only those facts apparent from the face of the pleadings, matters of which the court can take judicial notice, and judicial admissions in the record may be considered." *K. Miller Construction Co. v. McGinnis*, 238 Ill. 2d 284, 291, 938 N.E.2d 471, 477 (2010). "[A] cause of action should not be dismissed, pursuant to a section 2-615 motion, unless it is clearly apparent that no set of facts can be proved that would entitle the plaintiff to relief." *Tedrick v. Community Resource Center, Inc.*, 235 Ill. 2d 155, 161, 920 N.E.2d 220, 223 (2009).  "However, the plaintiff must allege facts sufficient to bring a claim within a legally recognized cause of action." *Tedrick*, 235 Ill. 2d at 161, 920 N.E.2d at 223.

¶ 9     "To succeed in a claim for negligence, a plaintiff must establish the existence of a duty, a breach of the duty, and an injury to the plaintiff that was proximately caused by the

breach." *Vancura v. Katris*, 238 Ill. 2d 352, 373, 939 N.E.2d 328, 342 (2010). Section 3-106 of the Act (745 ILCS 10/3-106 (West 2008)) immunizes local public entities and employees from liability for injuries occurring on public, recreational property except where liability is based on willful and wanton conduct by the entity or its employee. As neither party disputes application of section 3-106 in this case, plaintiffs were also required to allege and establish that Lucas's injuries were the result of defendant's willful and wanton conduct.

¶ 10        Under section 1-210 of the Act (745 ILCS 10/1-210 (West 2008)), "willful and wanton conduct" is defined as "a course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others or their property." "When the plaintiff is alleging that the defendant engaged in willful and wanton conduct, such conduct must be shown through well-pled facts, and not by merely labelling the conduct willful and wanton." *Winfrey v. Chicago Park District*, 274 Ill. App. 3d 939, 943, 654 N.E.2d 508, 512 (1995). Willful and wanton conduct is established where the public entity has been informed of a dangerous condition, knows that others have been injured because of that condition, or intentionally removes a safety feature or device from its recreational property. *Floyd v. Rockford Park District*, 355 Ill. App. 3d 695, 701, 823 N.E.2d 1004, 1010 (2005). Although generally a question of fact, a court may "hold as a matter of law that a public employee's actions did not amount to willful and wanton conduct when no other contrary conclusion can be drawn." *Young v. Forgas*, 308 Ill. App. 3d 553, 562, 720 N.E.2d 360, 366 (1999).

¶ 11        Initially, the parties disagree on whether the Act's definition of "willful and wanton conduct" incorporates common-law definitions of the term. In 1998, the legislature amended section 1-210 of the Act to add a sentence, stating that its "willful and wanton" definition "shall apply in any case where a 'willful and wanton' exception is incorporated into any immunity under this Act." 745 ILCS 10/1-210 (West 1998). Recently, the First District stated that the legislature, by its use of mandatory language in section 1-210, clearly "requires the use of the statutory definition of willful and wanton to evaluate the conduct of public entities in Tort Immunity cases to the exclusion of common[-]law definitions." *Tagliere v. Western Springs Park District*, 408 Ill. App. 3d 235, 243, 944 N.E.2d 884, 891 (2011). To support its conclusion, the court referenced hearing transcripts from the Illinois General Assembly that contained discussions about section 1-210's 1998 amendment and stated as follows:

> " 'A sentence has been added to the definition of willful and wanton conduct in the Act, clarifying that the statutory definition be used for cases affected by the Act and that other definitions of willful and wanton conduct that may have or will be provided through common laws, shall not be used in such cases.' 90th Ill. Gen. Assem., House Proceedings, May 20, 1998, at 17 (statement[ ] of Representative[ ] *** Dart)." *Tagliere*, 408 Ill. App. 3d at 243, 944 N.E.2d at 891.

¶ 12        Prior to *Tagliere*, the supreme court held that section 1-210's "willful and wanton" definition was "a codification of existing law" and that its plain meaning was "entirely consistent with *** long-standing common[-]law precedents." *Murray v. Chicago Youth Center*, 224 Ill. 2d 213, 235-41, 864 N.E.2d 176, 189-192 (2007). However, the *Murray* court expressly declined to consider the legislative intent in passing the 1998 amendment because the amendment was not in effect at the time of the accident at issue before it.

-4-

*Murray*, 224 Ill. 2d at 242-43, 864 N.E.2d at 193. Additionally, under common law, willful and wanton misconduct may be only degrees more than ordinary negligence or only degrees less than intentional wrongdoing, depending upon the facts of the case. *Ziarko v. Soo Line R.R. Co.*, 161 Ill. 2d 267, 275-76, 641 N.E.2d 402, 406 (1994). We interpret *Murray* as finding section 1-210's "willful and wanton" definition (prior to the 1998 amendment) as "entirely consistent" with only those common-law precedents that defined "willful and wanton" in the same manner as set forth in section 1-210.

¶ 13    The legislature used strong language in setting forth the definition of "willful and wanton" in section 1-210 of the Act. It also expressly stated that the definition it set forth was the one to apply in cases involving the Act. We agree with the First District's holding in *Tagliere* and find the Act's statutory definition of "willful and wanton" applies when evaluating a public entity's conduct in tort immunity cases. Also, that statutory definition applies to the exclusion of inconsistent common-law definitions.

¶ 14    Here, plaintiffs alleged Lucas was injured while playing tennis in defendant's facility "when he ran into a structural beam that was placed at an angle and hidden by a tarp" that was erected by defendant. In their brief, plaintiffs argue the structural steel beams in defendant's facility were a danger. They assert defendant's failure to warn patrons about the beams or protect them from the danger posed by the beams moved defendant's conduct "beyond the range of mere negligence and into the realm of willful and wanton misconduct." They further contend that the defendant's action in obscuring the beams behind a tarp increased the danger to its patrons. Plaintiffs argue a reasonable inference may be drawn from those facts that defendant showed a conscious disregard for the safety of its patrons. We disagree with plaintiffs and find the trial court committed no error in dismissing their complaint pursuant to section 2-615.

¶ 15    The cases relied upon by plaintiffs to support their position are distinguishable from the present case. They cite cases that involve factual allegations not presented in this case, such as defective conditions on the recreational property, notice of prior injuries, and removal of a known safety device. See *Carter v. New Trier East High School*, 272 Ill. App. 3d 551, 552-56, 650 N.E.2d 657, 658-61 (1995) (where the plaintiff's allegations, that the defendant disregarded the defective condition of a hole on its tennis court and failed to respond to complaints about other injuries, were held sufficient to establish willful and wanton conduct and withstand a section 2-615 dismissal); *Palmer v. Chicago Park District*, 277 Ill. App. 3d 282, 288-89, 660 N.E.2d 146, 150 (1995) (where the plaintiff alleged sufficient facts to establish willful and wanton misconduct by alleging he injured himself on a fallen fence surrounding a playlot, the defendant's employees inspected the playlot and could not have missed seeing the fallen fence, and the defendant took no corrective action to repair or warn about the downed fence); *Benhart v. Rockford Park District*, 218 Ill. App. 3d 554, 559-60, 578 N.E.2d 600, 603-04 (1991) (where the plaintiff's complaint alleged sufficient facts to show defendant's conduct was willful and wanton by alleging the defendant removed nonslip strips in the wave pool of a water park).

¶ 16    Here, the nature of plaintiffs' allegations are more similar to those presented in cases defendant cites for support. We note *Winfrey*, 274 Ill. App. 3d at 940-41, 654 N.E.2d at 510, where the plaintiff was injured when he fell through an opening in a chain-link fence that was

situated along the east wall of some railroad tracks. There, the plaintiff's complaint alleged the defendant "was willful and wanton in leaving the hole in the fence despite the danger it posed to invitees, failing to repair the hole even though plaintiff and other invitees would be exposed to a substantial drop-off, and/or in allowing a section of the east wall to remain unfenced, despite its knowledge that this condition exposed plaintiffs and other invitees to the drop-off." *Winfrey*, 274 Ill. App. 3d at 945, 654 N.E.2d at 513. The First District found the plaintiff's allegations were insufficient to support a claim of willful and wanton conduct. *Winfrey*, 274 Ill. App. 3d at 945, 654 N.E.2d at 513. The court noted the plaintiff did not allege "that defendant had received complaints about the condition of the fence or that defendant ignored the problem after inspecting the fence" and stated "[s]uch facts would serve to indicate that defendant showed an utter indifference or a conscious disregard for plaintiff's safety." *Winfrey*, 274 Ill. App. 3d at 946, 654 N.E.2d at 514. The court also criticized the plaintiff's complaint as being "remarkably devoid of factual allegations" and providing "no detailed explanation of the accident." *Winfrey*, 274 Ill. App. 3d at 946, 654 N.E.2d at 514.

¶ 17        Similarly, plaintiffs' allegations in this case do not rise to the level of willful and wanton conduct. Plaintiffs contend the structural steel beams in defendant's facility were a danger but alleged no facts showing defendant had prior notice of injuries caused by the beams or which occurred in a manner similar to those sustained by Lucas. They allege no defective condition on defendant's property of which it was aware or the removal of any known safety feature or device. Further, plaintiffs' allegations provide no detail on how Lucas's accident occurred or even the distance between the tarp and the structural steel beam. Their allegations fail to show defendant acted intentionally to cause harm or that it had any knowledge that its conduct posed a danger to others. Without more, their allegations amount, at most, to ordinary negligence and are insufficient to establish a cause of action based upon "utter indifference to or conscious disregard for the safety of others."

¶ 18        On appeal, plaintiffs further challenge the trial court's dismissal of their complaint with prejudice pursuant to section 2-619. "The purpose of a section 2-619 motion to dismiss is to dispose of issues of law and easily proved issues of fact at the outset of litigation." *Van Meter v. Darien Park District*, 207 Ill. 2d 359, 367, 799 N.E.2d 273, 278 (2003). "A section 2-619 motion admits as true all well-pleaded facts, along with all reasonable inferences that can be gleaned from those facts." *Porter v. Decatur Memorial Hospital*, 227 Ill. 2d 343, 352, 882 N.E.2d 583, 588 (2008). "[W]hen ruling on a section 2-619 motion to dismiss, a court must interpret all pleadings and supporting documents in the light most favorable to the nonmoving party." *Porter*, 227 Ill. 2d at 352, 882 N.E.2d at 588. "On appeal from a section 2-619 motion, the reviewing court 'must consider whether the existence of a genuine issue of material fact should have precluded the dismissal or, absent such an issue of fact, whether dismissal is proper as a matter of law.' " *O'Casek v. Children's Home & Aid Society of Illinois*, 229 Ill. 2d 421, 436, 892 N.E.2d 994, 1004 (2008) (quoting *Kedzie & 103rd Currency Exchange, Inc. v. Hodge*, 156 Ill. 2d 112, 116-17, 619 N.E.2d 732, 735 (1993)).

¶ 19        Here, plaintiffs do not dispute that section 3-106 applies, acknowledging that defendant is a local public entity and Lucas's injuries occurred on public, recreational property. They agree that to be successful in their claim, they were required to plead willful and wanton

conduct by defendant. As discussed, plaintiffs' allegations were insufficient to establish a cause of action based upon willful and wanton conduct. Because plaintiffs failed to sufficiently plead willful and wanton conduct by defendant, they allege no more than mere negligence and defendant is immunized from their claims pursuant to section 3-106. The trial court committed no error by dismissing plaintiffs' complaint pursuant to section 2-619. See *Floyd*, 355 Ill. App. 3d at 704, 823 N.E.2d at 1012 (holding that where the plaintiff's complaint could not withstand a section 2-615 motion to dismiss due to a failure to allege facts sufficient to state a cause of action for willful and wanton misconduct, the complaint was also properly dismissed pursuant to section 2-619(a)(9)).

¶ 20    Additionally, defendant attached the affidavit of James Spencer, its director of operations, to its motion to dismiss. It asserted Spencer's affidavit showed, as a matter of law, that its conduct was not willful and wanton. Although plaintiffs did not challenge the facts contained in Spencer's affidavit, they argued, as they do on appeal, that the affidavit was insufficient to support a motion to dismiss based on section 2-619. They argued the affidavit inappropriately contained matters that were nothing more than evidence defendant would expect to present in contesting the facts alleged in the complaint.

¶ 21    Pursuant to section 2-619(a)(9) of the Code (735 ILCS 5/2-619(a)(9) (West 2008)), a defendant may move to dismiss a claim, alleging it is barred by an "affirmative matter avoiding the legal effect of or defeating the claim." Where the grounds for dismissal "do not appear on the face of the pleading attacked[,] the motion shall be supported by affidavit." 735 ILCS 5/2-619(a) (West 2008). "When supporting affidavits have not been challenged or contradicted by counteraffidavits or other appropriate means, the facts stated therein are deemed admitted." *Raintree Homes, Inc. v. Village of Long Grove*, 209 Ill. 2d 248, 262, 807 N.E.2d 439, 447 (2004). "Immunity under the Act is an affirmative matter properly raised in a section 2-619(a)(9) motion to dismiss." *Van Meter*, 207 Ill. 2d at 367, 799 N.E.2d at 278.

¶ 22    Here, Spencer's affidavit did not merely dispute the factual allegations of plaintiff's complaint. Instead, it was used to support defendant's claim that some "affirmative matter" avoided the legal effect of or defeated plaintiffs' claim. The trial court committed no error by considering Spencer's affidavit.

¶ 23    In his affidavit, Spencer asserted (1) the distance from the tennis court baseline to the base of the structural steel beam was 19 feet and the distance from the baseline to the steel beam at a height of 72 inches above the floor was 18 feet and 7.5 inches; (2) the distance between the baseline and the steel beam exceeded recommendations of the United Sates Tennis Association for the minimum distance between the baseline and a "backstop"; (3) the "heavy curtains" defendant erected served as a physical and sight barrier to players on the court, allowed players to visualize the tennis balls more easily during play, separated the area of play, and minimized distractions; (4) padding had been affixed to the structural steel beams in an effort to minimize risk of injury; (5) the soft hanging curtains were used as a warning barrier and were intended to minimize the risk of collision-type injuries; and (6) he was "not aware of any other similar incident involving a player claiming to have been injured from colliding with one of the structural steel beams within [defendant's] tennis facility." In rendering its decision, the trial court noted photographs of defendant's tennis court were attached to its motion to dismiss. It observed that the top of the steel beam was visible above

the tarp, suggesting "that more of the beam lurks behind it."

¶ 24 Plaintiffs did not contest the allegations in Spencer's affidavit. After reviewing the pleadings and supporting materials in a light most favorable to plaintiff, we agree with the trial court's assessment that it could determine as a matter of law that plaintiffs did not, and could not, allege facts sufficient to establish willful and wanton conduct by defendant.

¶ 25 Finally, we find *Oelze v. Score Sports Venture, LLC*, 401 Ill. App. 3d 110, 927 N.E.2d 137 (2010), a case upon which plaintiffs rely, to be distinguishable. There, the plaintiff was injured while playing tennis when she ran into the curtain at the back of a tennis court and caught her foot in a rope exercise ladder lying behind the curtain. *Oelze*, 401 Ill. App. 3d at 113, 927 N.E.2d at 141. The trial court granted summary judgment to the defendant on the plaintiff's claim that the defendant engaged in willful and wanton misconduct and the plaintiff appealed. *Oelze*, 401 Ill. App. 3d at 116, 927 N.E.2d at 143-44. The First District reversed, agreeing with the plaintiff's assertion that a question of fact was created regarding whether the defendant "showed a conscious indifference in its actions by (a) continually storing *** equipment in a place it knew posed a hidden tripping hazard and/or (b) its [employee's] specific actions in putting/placing/throwing the rope ladder in the dangerous area or allowing it to drop on the ground in the dangerous area given his knowledge of the latent danger generally existing." *Oelze*, 401 Ill. App. 3d at 123, 927 N.E.2d at 149. The court also stated it was "clear that defendant and its employees were very conscious of the danger caused by objects on the floor of the walkway closely behind the curtain." *Oelze*, 401 Ill. App. 3d at 123, 927 N.E.2d at 149.

¶ 26 *Oelze* is factually distinguishable from the present case. First, it is not a case that involves the Act or the Act's definition of "willful and wanton" conduct. Further, although both cases involve injuries that occurred during a game of tennis, the plaintiff in this case ran into a structural steel beam rather than tripping on a piece of equipment that had not been properly stored. Moreover, the First District determined the defendant in *Oelze* was "very conscious of the danger" at issue in that case. Spencer's uncontested assertion in his affidavit shows defendant was not aware of any similar incident involving a player claiming to have been injured from colliding with one of its structural steel beams. This case does not involve the same "consciousness of danger" by defendant.

¶ 27 The Act immunizes defendant from ordinary negligence claims for injuries that occur on its recreational property. To be successful in their claim against defendant, plaintiffs were required to show Lucas's injuries were the result of defendant's willful and wanton conduct. Their pleading was insufficient to state a cause of action on that basis and the trial court committed no error by granting defendant's combined motion to dismiss.

¶ 28 For the reasons stated, we affirm the trial court's judgment.

¶ 29 Affirmed.