2025 IL App (1st) 231404

No. 1-23-1404

Opinion filed June 26, 2025

Fourth Division

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT
_____

| | | |
|---|---|---|
| ROBERT DEVOGELEAR, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | No. 23-CH-01120 |
| | ) | |
| THOMAS J. DART and PETER G. LISUZZO, | ) | Honorable |
| | ) | Neil J. Cohen, |
| Defendants-Appellees. | ) | Judge Presiding. |

_____

JUSTICE LYLE delivered the judgment of the court, with opinion.
Presiding Justice Rochford and Justice Hoffman concurred in the judgment and opinion.

**OPINION**

¶ 1    Plaintiff Robert Devogelear is employed by the Cook County Sherriff's Office (Sheriff's

Office) as a police officer. Defendant Thomas J. Dart, the sheriff of Cook County, filed a

disciplinary complaint against Mr. Devogelear with the Cook County Sheriff's Merit Board (Merit

Board), alleging that Mr. Devogelear had asked police academy recruits whether one of the recruits

in their class was transgender. Mr. Dart sought to dismiss Mr. Devogelear as a result of his

misconduct, but the parties entered into a settlement agreement whereby, *inter alia*, Mr. Dart

agreed to withdraw the complaint and Mr. Devogelear agreed that his conduct violated the

Sheriff's Office's code of conduct and that he would serve a 45-day suspension. Defendant Peter G. Lisuzzo, director of the Sheriff's Office of Professional Review, notified the Illinois Law Enforcement Training and Standards Board (Standards Board) of Mr. Devogelear's suspension. After serving his suspension, Mr. Devogelear returned to work but was assigned to a different position in the Sheriff's Office.

¶ 2    Mr. Devogelear brought suit, alleging, *inter alia*, that defendants acted willfully and wantonly, breached the settlement agreement, and committed constitutional violations based on his not being returned to his original position at the Sheriff's Office and on defendants' report to the Standards Board, which he alleged was not contemplated under the terms of the settlement agreement. Defendants filed a motion to dismiss the complaint pursuant to section 2-619.1 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619.1 (West 2022)), contending that Mr. Devogelear failed to allege sufficient facts to support his claims and that his claims were barred by the terms of the settlement agreement and various municipal immunity statutes. The circuit court agreed with defendants and granted their motion to dismiss the complaint.

¶ 3    On appeal, Mr. Devogelear asserts that the court erred in dismissing his complaint where defendants submitted false information to the Standards Board, and willfully and wantonly reassigned him and notified the Standards Board about his suspension, despite agreeing that he would not be disciplined beyond the suspension. Mr. Devogelear maintains that defendants breached the settlement agreement between the parties by reassigning him after his suspension and by reporting him to the Standards Board. Mr. Devogelear also contends that the circuit court erred in dismissing the other claims in his complaint. For the reasons that follow, we affirm the judgment of the circuit court.

¶ 4                          I. BACKGROUND

¶ 5    On June 6, 2018, while employed as a police officer for the Sheriff's Office, Mr. Devogelear asked recruits at the Sheriff's Office's Police Academy whether one of the recruits in their class was transgender. Mr. Devogelear asked this question based on a rumor, without official reason or purpose related to his employment. Mr. Dart filed a complaint with the Merit Board against Mr. Devogelear. The parties thereafter entered into a settlement agreement and release of claims, resolving the Merit Board complaint.

¶ 6    In the settlement agreement, the Sheriff's Office agreed to withdraw the pending Merit Board complaint and issue Mr. Devogelear a 45-day suspension. Mr. Devogelear would "return-to-work" on December 15, 2022. The Sheriff's Office agreed to not seek further discipline based on the facts alleged in the underlying Merit Board complaint. In exchange, Mr. Devogelear agreed that his conduct of asking the police academy recruits whether there was transgender recruit in their class violated the Cook County Sheriff's Police Department's Law Enforcement Service Manual, Conduct Policy by "conducting himself off-duty in a manner in which he knew or reasonably should have known is unbecoming his person as a Police Officer, was contrary to good order, efficiency, or morale, and which tended to reflect unfavorably upon the Sheriff's Office or its members." Mr. Devogelear further agreed that "he intended no harm in asking the question and realizes now that it was a sensitive issue." Mr. Devogelear agreed that he would attend training prior to returning to work and would forego any attempt to challenge the suspension.

¶ 7    The settlement agreement also contained a release section, whereby Mr. Devogelear agreed to irrevocably and unconditionally release the sheriff and Cook County from any and all actions and suits of any nature arising out of or relating in any way to the subject matter of the settlement

agreement and to the occurrences underlying the agreement, except for the purpose of enforcing the agreement.

¶ 8 On January 5, 2023, after Mr. Devogelear had returned to work, Mr. Lisuzzo filed a professional conduct report with the Standards Board, noting that Mr. Devogelear had been suspended for more than 10 days as a result of a violation of agency policy. Mr. Lisuzzo attached to the conduct report a 153-page "Report of Investigation" from the Office of Professional Review, as well as the signed settlement agreement.

¶ 9 On February 3, 2023, Mr. Devogelear filed a "COMPLAINT FOR EQUITTABLE [*sic*], AND MONETARY RELIEF, PURSUANT TO BREACH OF CONTRACT; RETALIATION, STIGMA-PLUS; FALSE LIGHT & WILLFUL & WANTON CONDUCT" against defendants Mr. Dart and Mr. Lisuzzo. Mr. Devogelear alleged that the settlement agreement between the parties provided that he would "suffer" only one adverse employment action, a 45-day suspension, after which he would return to work. Mr. Devogelear maintained that defendants breached the contract by assigning him to a different position at the Sheriff's Office after he served the suspension and by reporting him to the Standards Board. Mr. Devogelear asserted that because defendants were not required to report him to the Standards Board, such a report or charge would have to be bargained for as part of the settlement agreement.

¶ 10 Mr. Devogelear further alleged that the Report of Investigation that Mr. Lisuzzo filed with the Standards Board contained "a litany of knowingly made false allegations by the Sheriff." Mr. Devogelear maintained that defendants knew about these false allegations but nonetheless filed the report with the Standards Board "with deliberate indifference and a retaliatory motive." Mr. Devogelear alleged that defendants took these actions because they wanted to further punish him beyond what the parties agreed to in the settlement agreement. Mr. Devogelear identified what he

believed was the most significant false allegation, which was that he "outed" the transgender police recruit. Mr. Devogelear asserted that the Report of Investigation accused him of sexual harassment based on his conduct, which defendants knew to be false. Mr. Devogelear also contended that he suffered "deprivations caused by the Defendants (*e.g.*, career-ending filing by Defendants with Standards Board; loss of reputation; stigma attachment and monetary loss) because he exercised his right to free speech when he advocated in support" of the transgender recruit.

¶ 11    In count I of his complaint, Mr. Devogelear alleged that defendants acted willfully and wantonly in disregarding their obligations under the settlement agreement and in consciously disregarding Mr. Devogelear's safety and wellbeing. In count II, Mr. Devogelear alleged breach of contract and sought specific performance. In counts III and IV, Mr. Devogelear alleged "Stigma Plus," contending that he engaged in protected speech by advocating for the transgender police recruit and that defendants retaliated against him in violation of Illinois law and the first amendment to the United States Constitution (U.S. Const., amend. I). In count V, Mr. Devogelear alleged a claim for false light, contending that defendants' actions placed him in a false light before the public. In count VI, Mr. Devogelear sought declaratory relief that there was an actual controversy and a declaration that defendants' action of reporting him to the Standards Board was a retaliatory action and a breach of contract.

¶ 12    Defendants filed a joint motion to dismiss the complaint, pursuant to section 2-619.1 of the Code (735 ILCS 5/2-619.1 (West 2022)). Defendants asserted that because Mr. Devogelear was suspended for more than 30 days, under the collective bargaining agreement (CBA) between the Illinois Fraternal Order of Police Labor Council Union and the sheriff of Cook County, he was vacated from his position, and, therefore, was returned to work in a different role at the Sheriff's Office after serving his suspension. Defendants further contended that because Mr. Devogelear

was suspended for more than 10 days, Mr. Lisuzzo was required to notify the Standards Board that Mr. Devogelear had willfully violated the Sheriff's Office's policy, pursuant to section 9.2(a) of Illinois Police Training Act. 50 ILCS 705/9.2(a)(1) (West 2022)).

¶ 13    Defendants asserted that the court should dismiss counts I, IV, and V of Mr. Devogelear's complaint because he failed to plead sufficient facts to support those counts. With regard to count I, defendants contended that Mr. Devogelear alleged only the legal conclusion that defendants acted willfully and wantonly but failed to allege any facts showing that defendants owed him a duty, that they breached that duty, or that the breach caused Mr. Devogelear's injury. Defendants maintained that even if the court overlooked these deficiencies, their alleged conduct did not rise to the level of willful and wanton because there was nothing in the settlement agreement that required Mr. Devogelear to be returned to his original position. Defendants represented that Mr. Devogelear was assigned to a different position based on the Sheriff's Office's operational needs, not as a form of discipline. Defendants continued that Mr. Lisuzzo's report to the Standards Board was also not willful and wanton conduct because the notification was required by statute.

¶ 14    Defendants asserted that count IV should be dismissed because Mr. Devogelear failed to plead that he engaged in protected speech. Defendants pointed out that Mr. Devogelear failed to plead facts showing how and when he advocated for the transgender police recruit and how and when defendants knew of the alleged advocacy. Regarding count V, defendants contended that Mr. Devogelear failed to plead the public disclosure element of a claim for false light, noting that the only disclosure defendants made was to the Standards Board. Defendants also maintained that Mr. Devogelear failed to support with specific factual allegations his claim that defendants knew or should have known that the information in the report was false.

¶ 15    Defendants next asserted that the complaint should be dismissed pursuant to section 2-619 of the Code (735 ILCS 5/2-619 (West 2022)) based on the releases in the settlement agreement. The settlement agreement contained a release whereby Mr. Devogelear agreed to release all claims, whether known or unknown, related to the subject matter of the agreement. Defendants contended that these releases barred Mr. Devogelear's return to work and first amendment claims in counts I, III, IV, and V. Defendants also asserted that many of Mr. Devogelear's claims were barred by immunities. Specifically, defendants maintained that under section 2-201 of the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (745 ILCS 10/2-201 (West 2022)), they had absolute immunity for discretionary decisions in the exercise of policy. Defendants asserted that this included discretionary decisions such as whether to assign Mr. Devogelear to a different position when he returned to work and whether the Sheriff's Office was legally obligated to report Mr. Devogelear's suspension to the Standards Board.

¶ 16    Finally, defendants contended that counts II and VI should be dismissed because Mr. Devogelear failed to sufficiently plead that defendants breached the settlement agreement. Defendants pointed out that the agreement did not state that Mr. Devogelear would be returned to his original position after serving his suspension and did not prevent them from reporting his misconduct to the Standards Board.

¶ 17    In response, Mr. Devogelear first contended that defendants improperly recited factual background from the Report of Investigation that contained many "rescinded statements" and factual misrepresentations. Mr. Devogelear asserted that defendants withdrew the first administrative complaint and "replaced it" with a new complaint, demonstrating their acknowledgement that the initial administrative complaint contained "mistaken assertions and misrepresentations." Mr. Devogelear maintained that the only correct factual assertion is that he

asked whether there was a transgender person in the police academy recruitment class after which Mr. Dart "launched a vile campaign against Officer Devogelear in which Mr. Dart wrongfully accused [Mr.] Devogelear of being a sex harasser for asking the question." Mr. Devogelear asserted that Mr. Dart made these allegations to "avoid liability" and place the blame on Mr. Devogelear when, in fact, it was Mr. Dart and other staff members of the police academy who had "outed" the transgender recruit. Mr. Devogelear noted that the transgender officer was currently involved in litigation with the Sheriff's Office and Mr. Dart in federal court.

¶ 18    Mr. Devogelear further contended that his claims were not barred by collateral estoppel because the complained-of conduct occurred after the settlement agreement had been executed. He also asserted that defendants were not immunized by the Tort Immunity Act because they acted willfully and wantonly. Finally, Mr. Devogelear maintained that defendants materially breached the settlement agreement because Mr. Devogelear would not have signed the settlement agreement if he had been told that he would be reported to the Standards Board. Mr. Devogelear contended that the settlement agreement provided that he would be returned to work and if defendants sought to further punish him by reassignment to a different position, such punishment should have been bargained for in the settlement agreement.

¶ 19    The court granted defendants' motion and dismissed Mr. Devogelear's complaint with prejudice. The court found, *inter alia*, that Mr. Devogelear failed to support his claims with adequate factual allegations, that his claims were barred by the Tort Immunity Act, and that he failed to establish any constitutional violations. Mr. Devogelear filed a timely notice of appeal from the circuit court's dismissal order. We find that we have jurisdiction to consider the merits of this appeal pursuant to Illinois Supreme Court Rules 301 (eff. Feb. 1, 1994) and 303(a) (eff. July 1, 2017).

¶ 20                                    II. ANALYSIS

¶ 21    On appeal, Mr. Devogelear contends that the court erred in granting defendants' motion to dismiss where defendants breached the settlement agreement by reassigning him to a different position at the Sheriff's Office and by notifying the Standards Board as retaliation for "advocating" for the transgender recruit. Mr. Devogelear maintains that defendants are not immunized by the Tort Immunity Act because they acted willfully and wantonly by intentionally misrepresenting Mr. Devogelear's conduct to the Standards Board.

¶ 22                                  A. Standard of Review

¶ 23    Defendants moved to dismiss Mr. Devogelear's complaint, pursuant to section 2-619.1 of the Code. (735 ILCS 5/2-619.1 (West 2022)). "Section 2-619.1 of the Code permits a party to combine a section 2-615 motion to dismiss based upon a plaintiff's substantially insufficient pleadings with a section 2-619 motion to dismiss based upon certain defects or defenses." *Edelman, Combs & Latturner v. Hinshaw & Culbertson*, 338 Ill. App. 3d 156, 164 (2003). In determining the legal sufficiency of the complaint under either section, we accept as true all well-pleaded facts, and we draw all reasonable inferences from those facts in favor of the plaintiff. *Lykowski v. Bergman*, 299 Ill. App. 3d 157, 162 (1998). "A legally sufficient complaint is one that sets forth a legally recognized claim upon which the plaintiff is entitled to recover damages. [Citation]. A factually sufficient complaint must plead facts that are essential to the plaintiff's alleged cause of action." *Id.* at 163. Our standard of review is *de novo* under either section of the Code. *Glasgow v. Associated Banc-Corp.*, 2012 IL App (2d) 111303, ¶ 11.

¶ 24                              B. Count I: Willful and Wanton

¶ 25    In count I of his complaint, Mr. Devogelear alleged that defendants acted willfully and wantonly. As our supreme court has repeatedly stated, there is no separate and distinct tort for

willful and wanton conduct. See, *e.g.*, *Doe-3 v. McLean County Unit District No. 5 Board of Directors*, 2012 IL 112479, ¶ 19; *Doe v. Coe*, 2019 IL 123521, ¶ 78. Rather, willful and wanton conduct is regarded as an aggravated form of negligence. *Krywin v. Chicago Transit Authority*, 238 Ill. 2d 215, 235 (2010).

> "In order to recover damages based on willful and wanton conduct, a plaintiff must plead and prove the basic elements of a negligence claim—that the defendant owed a duty to the plaintiff, that the defendant breached that duty, and that the breach was a proximate cause of the plaintiff's injury." *Doe-3*, 2012 IL 112479, ¶ 19.

Additionally, the plaintiff must allege either a deliberate intention to cause harm or a conscious disregard for the plaintiff's welfare. *Id.* " 'When the plaintiff is alleging that the defendant engaged in willful and wanton conduct, such conduct must be shown through well-pled facts, and not by merely labelling the conduct willful and wanton.' " *Thurman v. Champaign Park District*, 2011 IL App (4th) 101024, ¶ 10 (quoting *Winfrey v. Chicago Park District*, 274 Ill. App. 3d 939, 943 (1995)).

¶ 26    Initially, we observe that the allegations in Mr. Devogelear's complaint in support of count I sound more in breach of contract than in negligence, willful and wanton or otherwise. Mr. Devogelear asserted that defendants' actions showed "an utter indifference to and conscious disregard for their obligations under the contract" and that he sought to be restored to his original assignment and for defendants to withdraw the filing with the Standards Board. Notably, Mr. Devogelear did not plead that defendants owed him a duty, that they breached that duty, or that the breach proximately caused his injuries. Mr. Devogelear did plead that defendants acted with the deliberate intent to cause him harm, but alleges that they did so with "conscious disregard for their obligations under the contract." He further pled that defendants acted with "utter indifference

and conscious disregard" for his "safety and wellbeing" and "for the rights of [the transgender Sheriff's Office recruit] and Devogelear to prosecute action against Sheriff Dart and his [Office of Professional Review], *inter alia*[,] without retribution and retaliation." But Mr. Devogelear failed to support either of these legal conclusions with specific factual allegations. See *id.*

¶ 27    Nonetheless, in his brief before this court, Mr. Devogelear intermingles the arguments alleged in his claim for false light with his willful and wanton claim. He maintains that he alleged that the Report of Investigation that defendants submitted to the Standards Board contained a number of statements that defendants knew to be false. Mr. Devogelear acknowledges that the Report of Investigation is not included in the record but maintains that his description of the file and his identification of statements therein, which defendants knew to be false, should have been accepted as true at this stage of the proceedings.

¶ 28    While it is true that a motion to dismiss brought pursuant to section 2-615, and by extension section 2-619.1, accepts as true all well-pleaded facts raised in the complaint, it does not admit legal and factual conclusions that are unsupported by allegations of specific facts. *Northwestern Illinois Area Agency on Aging v. Basta,* 2022 IL App (2d) 210234, ¶¶ 30-31. The thrust of Mr. Devogelear's claim appears to be that defendants were attempting to falsely shift the blame to Mr. Devogelear for "outing" the transgender recruit when it was in fact Mr. Dart and other Sheriff's Office staff who "outed" her. Mr. Devogelear maintains that defendants then retaliated against Mr. Devogelear because he "advocated" for the transgender recruit. He asserts that the only wrong he committed was "asking [a] question."

¶ 29    First, Mr. Devogelear's allegations that the Report of Investigation contained false statements and that defendants knew these allegations were false are legal conclusions, not well-pled factual allegations. He refers to two separate investigative files, one which allegedly contains

knowingly false statements made by defendants and a second, "replacement" file containing new allegations that somehow implicitly demonstrates that defendants acknowledged the allegations made in the first investigative file were false. Notably, however, neither investigative file is included in the record filed on appeal. There is a page in the record indicating that plaintiff removed the Report of Investigation that defendants filed with the Standards Board from the record and filed it under seal in the circuit court. Defendants noted in support of their motion to dismiss that plaintiff filed it under seal without leave of court. Nonetheless, it was not filed in this court, under seal or otherwise. It is well settled that the appellant bears the burden of providing this court with a complete record in order to facilitate meaningful review. *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984). We resolve all doubts arising from the incompleteness of the record against the appellant. *Id.* at 392. Mr. Devogelear's insistence that we must accept his rendition of the statements allegedly made therein and his interpretation of their truth or falsity is not well-taken. As a final note, the circuit court's order does not reference either investigative file, making it unclear whether the circuit court had an opportunity to review the documents.

¶ 30    Mr. Devogelear also fails to support his claim of retaliation with any factual support. He cites generally to a pending federal case between the transgender recruit and Mr. Dart, but fails to explain how this supports his claim for willful and wanton negligence. He also makes several assertions that Mr. Dart's actions caused harm to the transgender recruit, but she is not a party to this action. In short, Mr. Devogelear fails to state a claim for willful and wanton negligence.

¶ 31    Even if we found that the complaint stated a cause of action for willful and wanton negligence, we would nonetheless find that defendants were immunized from such a claim under the Tort Immunity Act. The purpose of the Tort Immunity Act is to protect local public entities and public employees from liability arising from the operation of government. 745 ILCS 10/1-

101.1 (West 2022). As relevant here, section 2-201 provides, "a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused." *Id.* § 2-201. "Discretionary immunity for public officials is 'premised upon the idea that such officials should be allowed to exercise their judgment in rendering decisions without fear that a good-faith mistake might subject them to liability.' " *Andrews v. Metropolitan Water Reclamation District of Greater Chicago*, 2019 IL 124283, ¶ 26 (quoting *Harrison v. Hardin County Community Unit School District No. 1*, 197 Ill. 2d 466, 472 (2001)). Significantly, section 2-201 provides absolute immunity for both negligence and willful and wanton conduct. *Id.*

¶ 32    To determine whether a municipal defendant is entitled to discretionary immunity, we apply a two-part test. *Id.* ¶ 27. First, the municipal defendant must establish that the employee held either a position involving the determination of policy or a position involving the exercise of discretion. Second, the municipal defendant must prove that the employee engaged in both the determination of policy and the exercise of discretion when performing the act or omission from which the plaintiff's injury resulted. *Id.* "Policy determinations are defined as decisions requiring the public entity or employee to balance competing interests and make a judgment call as to what solutions will best serve each of those interests." *Id.* ¶ 28. "An employee's act or omission will be deemed discretionary where the employee has exercised personal deliberation and judgment in deciding whether to perform a particular act, or how and in what manner that act should be performed." (Internal quotation marks omitted.) *Id.*

¶ 33    In this case, Mr. Devogelear challenges his reassignment to a different position following his suspension and Mr. Lisuzzo's report to the Standards Board. Mr. Dart maintained that he

reassigned Mr. Devogelear because, under the CBA, his position was considered vacated after 30 days and Mr. Dart determined that the reassignment best served the Sheriff's Office's operational needs. This is clearly both a determination of policy and discretion. Similarly, Mr. Lisuzzo asserted that he was required to report Mr. Devogelear's conduct to the Standards Board pursuant to section 9.2(a)(1) of the Illinois Police Training Act. That section provides:

> "All law enforcement agencies and the Illinois State Police shall notify the Board of any final determination of a willful violation of department, agency, or the Illinois State Police policy, official misconduct, or violation of law within 10 days when:
>
> > (1) the determination leads to a suspension of at least 10 days." 50 ILCS 705/9.2(a)(1) (West 2022).

Mr. Lisuzzo maintained that he was required to report Mr. Devogelear to the Standards Board under this section because Mr. Devogelear willfully violated the Sheriff's Office's code of conduct and was suspended for more than 10 days.

¶ 34    Mr. Devogelear responds, however, that this section did not require that he be reported to the Standards Board because his conduct was not "willful." He asserts that because of the lack of intentionality in his conduct, Mr. Lisuzzo "may" have reported him to the Standards Board, but was not required to do so. See *id.* § 9.2(a) ("Agencies and the Illinois State Police *may* report to the Board any conduct they deem appropriate to disseminate to another law enforcement agency regarding a law enforcement officer." (Emphasis added.)).

¶ 35    First, setting aside any argument about the intentionality of Mr. Devogelear's conduct, the fact that Mr. Lisuzzo "may" report to the Standards Board any conduct the Sheriff's Office deemed appropriate is clearly an exercise of discretion and a policy determination subject to section 2-201 immunity. Second, Mr. Devogelear fails to develop any argument regarding how his conduct was

not willful or intentional. By the terms of the settlement agreement, Mr. Devogelear agreed that his conduct of asking the police academy recruits whether there was transgender recruit in their class violated the Cook County Sheriff's Police Department's Law Enforcement Service Manual, Conduct Policy by "conducting himself off-duty in a manner in which he knew or reasonably should have known is unbecoming his person as a Police Officer, was contrary to good order, efficiency, or morale, and which tended to reflect unfavorably upon the Sheriff's Office or its members." Mr. Devogelear further agreed that "he intended no harm in asking the question and realizes now that it was a sensitive issue." Although Mr. Devogelear may have intended no harm, this does not mean that he did not act willfully or intentionally. Black's Law Dictionary defines "willful" as an action "[d]one wittingly or on purpose, as opposed to accidentally or casually; voluntary and intentional, but not necessarily malicious." Black's Law Dictionary (12th ed. 2024). Indeed, in his brief, Mr. Devogelear acknowledges that he asked the question, thereby violating the conduct policy, "out of curiosity and for prideful reasons *** and since he had heard a rumor." He does not maintain that he asked the question accidentally. Thus, Mr. Devogelear agreed in the settlement agreement that the conduct that led to his suspension was willful. Therefore, Mr. Lisuzzo was required to report him to the Standards Board.

¶ 36    Mr. Devogelear therefore failed to adequately plead a claim for willful and wanton negligence, and defendants are immune from such a claim under the Tort Immunity Act. Accordingly, we find that the circuit court did not err in dismissing count I of Mr. Devogelear's complaint.

¶ 37                    C. Count II: Breach of Contract

¶ 38    In count II of his complaint, Mr. Devogelear alleged that defendants breached the settlement agreement by not returning him to his original position following his suspension and

by reporting him to the Standards Board. Mr. Devogelear maintains that if defendants intended to report him to the Standards Board and reassign him to a different position, such conditions should have been set out in the settlement agreement. He asserts that he would not have signed the settlement agreement if he knew he would be reported to the Standards Board and reassigned.

¶ 39   In order to state a claim for breach of contract, a plaintiff must allege (1) an offer and acceptance, (2) consideration, (3) definite and certain terms of the contract, (4) plaintiff's performance of all required contractual conditions, (5) defendants' breach of the terms of the contract, and (6) damage resulting from the breach. *Barille v. Sears Roebuck & Co.*, 289 Ill. App. 3d 171, 175 (1997).

¶ 40   In the settlement agreement, the parties agreed that Mr. Devogelear would serve a 45-day suspension beginning on October 31, 2022, and return to work on December 15, 2022. The agreement further provided that defendants would not seek "further discipline" based on the facts underlying the Merit Board complaint. Mr. Devogelear did not allege that he was not returned to work in a timely manner, but asserts that by reassigning him to a different position and notifying the Standards Board, defendants implemented further discipline beyond what the parties agreed to in the settlement agreement. Mr. Devogelear asserts that the report to the Standards Board was a "career stifling action."

¶ 41   First, as discussed above, Mr. Lisuzzo was required to report Mr. Devogelear to the Standards Board by the terms of 9.2(a)(1) of the Illinois Police Training Act. That section provides that law enforcement agencies "shall" report a willful violation of department policy or official misconduct when the determination leads to a suspension of at least 10 days. 50 ILCS 705/9.2(a) (West 2022). "The word 'shall' generally indicates the legislature's intent to impose a mandatory obligation." *Openlands v. Department of Transportation*, 2018 IL App (1st) 170340, ¶ 27. Mr.

Devogelear fails to explain how this mandatory reporting to the Standards Board constitutes "further discipline" beyond vague speculation that it will hurt his further career advancement.

¶ 42 Further, there is nothing in the settlement agreement that provides that Mr. Devogelear will be returned to work in the same position. The CBA, which defendants attached to their motion to dismiss, provides in article IV, section 4.8, that a position will become vacant when an employee is, *inter alia*, suspended for more than 30 days. Mr. Devogelear was suspended for 45 days. Thus, his position became vacant during his suspension, and defendants represented that they filled the position. Mr. Devogelear was then assigned to a different position at the Sheriff's Office. Again, Mr. Devogelear fails to allege that the new position represents some form of additional discipline. Mr. Devogelear does not allege that the new position pays less, has less opportunity for advancement, or represents some form of demotion. In short, he fails to allege how he was damaged by the assignment to a new position. Accordingly, we find that the circuit court did not err in dismissing count II of Mr. Devogelear's complaint.

¶ 43 D. False Light, Stigma Plus, Declaratory Judgment, and Attorney Fees

¶ 44 Next, we find that Mr. Devogelear has forfeited any argument that the circuit court erred in dismissing his claims for false light, stigma plus, and declaratory judgment. In his brief before this court, Mr. Devogelear fails to develop any argument regarding these claims and merely asserts that he believes he has "satisfied his pleading burden" and "incorporates his Complaint and his Response to the motion to dismiss herein." This is insufficient to warrant review by this court. Illinois Supreme Court Rule 341(h)(7) (eff. Oct. 1, 2020) requires that a party provide argument and citation of any relevant authority when raising an issue. *People v. Guest*, 166 Ill. 2d 381, 414 (1995). By failing to do so, Mr. Devogelear forfeited review of these issues. See *In re Marriage of Auriemma*, 271 Ill. App. 3d 68, 72 (1994) ("[A] reviewing court is entitled to have the issues on

appeal clearly defined with pertinent authority cited and a cohesive legal argument presented. The appellate court is not a depository in which the appellant may dump the burden of argument and research." (Internal quotation marks omitted.)); see also *Elder v. Bryant*, 324 Ill. App. 3d 526, 533 (2001) ("Mere contentions, without argument or citation of authority, do not merit consideration on appeal. [Citation.] Allegations of trial court error summarily raised without supporting authority are deficient and warrant a finding of waiver."). Accordingly, we will not consider Mr. Devogelear's arguments that the court erred by dismissing counts III, IV, V, and VI of his complaint.

¶ 45    Finally, because all of Mr. Devogelear's claims were dismissed, we find it unnecessary to consider his argument for attorney fees. In any event, Mr. Devogelear likewise fails to develop any argument regarding his claim for attorney fees, again directing this court to the allegations in his complaint, asserting that defendants reported him to the Standards Board to gain leverage in the pending federal litigation between the transgender recruit and Mr. Dart, and contending that he believes his "*eventual motion* for attorney fees should be granted." (Emphasis added.) Such an argument is simply insufficient to warrant review by this court.

¶ 46    On May 23, 2024, defendants filed a motion to not hold argument on certain dates. We ordered that motion taken with the case. The order filed in this case pursuant to Illinois Supreme Court Rule 352(a) (eff. July 1, 2018) reflects that this court determined oral argument was not necessary to our resolution of the case because the briefs set forth no novel legal issue or complicated factual matter indicating that oral argument would further our consideration of this appeal. In addition, the dates specified in defendants' motion have passed. Accordingly, we deny the motion as moot.

¶ 47                                    III. CONCLUSION

¶ 48     For the reasons stated, we affirm the judgment of the circuit court of Cook County.

¶ 49     Affirmed.

*Devogelear v. Dart*, 2025 IL App (1st) 231404

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 23-CH-01120; the Hon. Neil J. Cohen, Judge, presiding. |
| **Attorneys for Appellant:** | Christopher Cooper, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Kimberly M. Foxx, State's Attorney, of Chicago (Cathy McNeil Stein, Jonathon D. Byrer, and Charles T. Little, Assistant State's Attorneys, of counsel), for appellees. |